[Nos. A076882, A077532. First Dist., Div. Four. Oct. 29, 1998.]

RICHARD F. EVANGELHO et al., Plaintiffs and Respondents, v. DARLENE T. PRESOTO, Defendant and Appellant.

**COUNSEL**

Carr, McClellan, Ingersoll, Thompson & Horn and Keith P. Bartel for Defendant and Appellant.

Michael Serratto for Plaintiffs and Respondents.

**OPINION**

**HANLON, P. J.**—Appellant Darlene T. Presoto (appellant) and respondents Richard F. Evangelho, John M. Evangelho, Daryl R. Evangelho, Frank J. Evangelho and Ernest Evangelho (respondents) are the children of decedent Joan D. Evangelho (decedent). The instant consolidated appeal arises from two orders which have the effect of requiring appellant to file a full accounting for a revocable living trust set up by decedent for the benefit of all her children; which includes an accounting for all multiple-party bank accounts in the name of appellant and decedent.

Appellant contends: (1) the trial court improperly based its orders on declarations and verified petitions; (2) an accounting should not be ordered for appellant's joint checking accounts with decedent; (3) an accounting should not be ordered for the period when decedent was alive and the trust was revocable by decedent; and (4) an accounting should not be ordered for the period when appellant was not a trustee of the revocable trust. We affirm the orders of the trial court insofar as they define the rights of respondents as beneficiaries to an accounting.

## I. Background Facts and Proceedings

Decedent had six children, the five respondents and appellant. On August 20, 1989, decedent was seriously injured in a motor vehicle accident which took the life of her husband, Ernest J. Evangelho. From the time of the accident until her death on September 12, 1995, the decedent was not in the best of health.

On February 28, 1990, decedent created "The Joan D. Evangelho Trust" (trust). Assets of the trust were: (1) all personal property "belonging to" decedent; (2) real property known as 371 Montwood Circle, Redwood City, California; (3) unimproved real property in San Mateo County, and (4) all investments held in Paine Webber account No. FK21147-14. The persons named as trustees were appellant and respondent John M. Evangelho. Appellant signed a written acceptance as trustee. John M. Evangelho did not sign the acceptance and was not aware of the existence of the trust until after the death of decedent. The trust included a no contest clause.

Article two of the trust provided for the distribution of trust assets upon the death of decedent. Since appellant and respondents outlived decedent, no reference will be made in this opinion to provisions for issue or other successors in interest. Decedent's jewelry was to be "distributed outright" to appellant. "The remaining trust estate" was to be distributed in equal shares to appellant and respondents.

Article four provided that decedent as the "settlor" "may at any time revoke this instrument in whole or in part by an instrument in writing delivered to the trustee." "The power of the settlor to revoke or amend this instrument is personal to her, or her attorney-in-fact." On February 27, 1990, decedent executed a durable power of attorney appointing appellant her "attorney-in-fact." Appellant "engaged in no transactions pursuant to the Power of Attorney."

On March 6, 1990, decedent executed a first amendment to the trust. It provided that the 371 Montwood Circle real property would be "distributed outright" to appellant upon the death of decedent and deleted appellant as a beneficiary of the "remaining trust estate."

On October 8, 1990, decedent executed a second amendment to the trust which "replaced co-trustees, [appellant] and John M. Evangelho with herself as trustee."

On January 18, 1991, decedent executed a third amendment to the trust which provided that upon the death of decedent, her 1990 Chevrolet Van would be "distributed outright" to Richard F. Evangelho and $5,000 would be distributed to Tangkina Fifita.

On July 1, 1991, decedent executed a fourth amendment to the trust, which provided that upon the decedent's death her interest in the real property known as 2460 Howard Avenue, San Carlos, CA would be "distributed outright" to appellant. Decedent sold her home in Redwood City and, with the proceeds of that sale and additional cash, acquired a 58 percent interest in the San Carlos residence where she was living with appellant's family.

The only asset in which decedent had an interest outside the trust was one bank account at Wells Fargo Bank. During the time decedent lived in Redwood City, the account was maintained at the Woodside Road office as account No. 0331-308353. When decedent moved to San Carlos the account was transferred to such city and became account No. 0450-534946. Both accounts were joint tenancy accounts between appellant and decedent. Both were used by decedent as day-to-day personal operating accounts.

At the time the trust was created, the Paine-Webber account had securities and other assets valued at approximately $450,000. At the time of decedent's death, the value of the Paine-Webber account was approximately $132,000. The difference between the two amounts is $318,000.

Respondent John M. Evangelho reviewed "a portion" of the bank records of the trust for the years 1990 and 1991. For the years 1992 to 1995, "small portions" of the records were viewed by such respondent.

These records disclose that appellant wrote several checks on the Paine-Webber trust account: From May 26, 1990, to February 1, 1991, appellant wrote 12 checks totaling $26,290 made payable to cash or appellant's personal checking account. On May 8, 1990, appellant wrote a check for $1,846.79 made payable to "Levitz." On October 10, 1990, appellant wrote a check for $12,000 which was made payable to appellant and John M. Evangelho as "Trustees of the Joan D. Evangelho Trust." On the back of the check, appellant wrote "for deposit only" to the joint checking account in the names of appellant and decedent. The check was never presented to John M. Evangelho for endorsement. On January 24, 1991, appellant wrote a check for $5,000 made payable to "Fidelity Title Insurance."

Respondents also discovered that appellant wrote many checks on the joint checking accounts for clothing and related expenses, from February 16, 1990, until the death of decedent.

Appellant stated that decedent approved all transactions by appellant involving trust assets or other accounts and never requested an accounting. Two checks written on the Paine-Webber trust by decedent totaling $11,000 were presented by appellant. The check for $10,000 was a gift to respondent Ernest Evangelho. Appellant stated that the assets in the Paine-Webber trust were diminished because the value of the stock portfolio declined substantially and decedent used the funds for her own purposes, including gifts to respondents.

## II. THE FACTUAL RECORD

■ Appellant contends that there was no factual basis for the trial court's orders. This contention lacks merit.

No witnesses gave testimony and no documents were formally introduced into evidence in the present case. The factual record submitted for the appeal consists of the trust documents; respondents' verified petitions; statements in appellant's unsworn, unverified opposition memoranda; appellant's durable power of attorney for decedent; oral representations by counsel; a bank statement; canceled checks; and a declaration of respondent John M. Evangelho.

Probate Code section 1022 provides, "[a]n affidavit or verified petition shall be received as evidence when offered in an uncontested proceeding under this code." Thus when challenged in a lower court, affidavits and verified petitions may not be considered as evidence at a contested probate hearing. (*Estate of Wallace* (1977) 74 Cal.App.3d 196, 200-201 [141 Cal.Rptr. 426]; *Estate of Duncan* (1969) 1 Cal.App.3d 212, 215 [81 Cal.Rptr. 568].)

"However, where the parties do not object to the use of affidavits in evidence, and where both parties adopt that means of supporting their positions, the parties cannot question the propriety of the procedure on appeal. [Citation.] . . . The trustee's petition and [the objector's] written objections were both verified in the form of declarations under the penalty of perjury. [Citation.] Absent an objection, these documents were properly considered as evidence. [Citations.]" (*Estate of Nicholas* (1986) 177 Cal.App.3d 1071, 1088 [223 Cal.Rptr. 410]; *Estate of Fraysher* (1956) 47 Cal.2d 131, 134-135 [301 P.2d 848].)

Statements of fact in unsworn, unverified memoranda can also be properly considered as evidence in the absence of objections. (*Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 359 [15 Cal.Rptr. 90, 364 P.2d 266].) The only such statements herein are in documents submitted by appellant.

In the present case, both parties submitted the trust documents and some canceled checks as exhibits to support their respective positions. Neither party· objected to any of the factual statements presented by the other and neither proffered, or mentioned the need for oral testimony or formal introduction of exhibits. The arguments at the trial court hearing, cited by appellant as "clear and timely objections" that "the evidence was incompetent," refer to the standard of proof required and are not objections to the type of evidence before the trial court. Accordingly, the documents submitted as the appellate record are proper "evidence" in each of the two proceedings (Nos. A076882, A077532) which constitute the consolidated appeal.

## III. DISCUSSION

On July 8, 1996, respondents filed an application for an order that their proposed petition to compel appellant as trustee to account to them as beneficiaries (and for related relief), did not constitute a "contest" within the meaning of the trust.[1] The trial court made a finding of fact and ordered that: (1) the proposed petition for an accounting was not a will contest; (2) the proposed petition for a constructive trust was a will contest. Neither of these orders was appealed.

Appellant has limited her appeal to the third portion of the order which provided as follows: "With the death of the [decedent], the settlor and person having the power to revoke the [trust] on September 12·, 1995, [respondents] have the rights afforded beneficiaries under Division 9 of the Probate Code (the Trust Law). This order . . . is made with prejudice."

Thereafter, on September 20, 1996, respondents filed a petition under section 17200, subdivision (b)(7) of the Probate Code[2] to "compel a trustee to account to beneficiaries and to compel redress of breach of trust." The petition alleged that appellant violated her duties as trustee, in part, by improperly transferring funds from the trust to a bank account which she controlled. It sought an accounting for the period February 25, 1990 to "the present," which would include all trust property that had been wrongfully disposed of by appellant.

The trial court granted the petition. Appellant limited her appeal to "those portions of the Order which require her to account for: (1) transactions related to accounts held in joint tenancy between [appellant] and [decedent];

---

[1]This is the appeal in No. A076882.

[2]All future citations to statutes are to the Probate Code, unless otherwise stated.

and (2) trust transactions which were generated not by [appellant] but, rather, by [decedent]."[3]

When the two orders are read together it is clear the trial court found that the respondents had the right as beneficiaries to petition for an accounting of the trust estate, and then it granted the petition for an accounting.

Under current law, section 1304, subdivision (a)(1) provides: "With respect to a trust, the grant or denial of the following orders is appealable: [¶] (a) Any final order under Chapter 3 (commencing with Section 17200) of Part 5 of Division 9, except the following: [¶] (1) Compelling the trustee to submit an account or report acts as trustee."[4]

A reading of section 1304 and its predecessor statute, section 17207, would lead to the conclusion that the appeal is premature. Until the accounting is made and the order sustaining objections or approving the accounting is entered, there is no appealable order.

But appellant's contention is that the issue is broader than the order of a mere accounting. Appellant's contention is that the court's order could not compel an accounting of the joint tenancy account because a joint tenancy account is an asset separate and distinct from the trust.

The interest in joint bank accounts both before and after the death of one joint tenant is governed by the California Multiple Party Accounts Law and in particular part 2 (commencing with section 5100) of division 5 of the Probate Code. (Civ. Code, § 683, subd. (b); 3 Witkin, Summary of Cal. Law (9th ed. 1987) Negotiable Instruments, § 142, pp. 380-381; *id.* (1998 supp.) § 142, p. 137.)

Section 5301, subdivision (a) provides: "An account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." The Law Revision Commission comment to section 5301 states, in pertinent part: "The presumption under subdivision (a) that an account belongs to the parties during their lifetimes in proportion to the net contributions by each changed the rule under former law. Under former law, if the joint account provided for rights of survivorship, the account was

---

[3]This is the appeal in No. A077532.

[4]It should be noted that during the pendency of this appeal, the Legislature enacted Assembly Bill No. 1172 (Stats. 1997, ch. 724, § 11), which repealed former section 17207, relied upon by respondents, and added section 1304. While the language is broader, the import is the same.

presumed to be a joint tenancy and each joint tenant was presumed to have an equal interest in the account. [Citation.]" (Cal. Law Revision Com. com., 53 West's Ann. Prob. Code (1991 ed.) § 5301, pp. 191-192.)

Section 5302, subdivision (a) provides in pertinent part: "Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intent."

The presumptions set forth in these code sections exist for the purpose of determining ownership between parties to these accounts, and, as section 5201, subdivision (a) provides, between parties to these accounts and their successors.[5] Because the issue before us relates to the use and disposition of the funds during the lifetime of the parties, the presumption of 5301, subdivision (a) applies. The evidence is clear that the joint accounts were used by the decedent as day-to-day operating accounts. The trial court found that all of the sums deposited into the Wells Fargo multiparty account came from and belonged to the Joan D. Evangelho Trust. Had the sums remained in the multiparty account they would have become part of the trust.

During the time the trustor was alive, the trust was revocable. And, as such it was subject to section 15800 which provides in part, as follows: ". . . during the time that a trust is revocable and the person holding the power to revoke the trust is competent: [¶] (a) The person holding the power to revoke, and not the beneficiary, has the rights afforded beneficiaries under this division." (§ 15800.) The effect of this section, according to the Law Revision Commission comment on this code section, is to postpone the enjoyment of the rights of beneficiaries of revocable trusts until the death or incompetence of the settlor or the person who can revoke the trust. (Cal. Law Revision Com. com., 54 West's Ann. Prob. Code, *supra*, § 15800, p. 644.) During the time the trust may be revoked, the trustee is not required to account to a beneficiary. (§ 16064.)[6]

The clear import of the legislative intent of section 15800 and section 16064 was to postpone the enjoyment of rights under the trust law by

---

[5]Section 5201, subdivision (a) provides: "The provisions of Chapter 3 (commencing with Section 5301) concerning beneficial ownership as between parties, or as between parties and P.O.D. payees or beneficiaries of multiple-party accounts, are relevant only to controversies between these persons and their creditors and other successors, and have no bearing on the power of withdrawal of these persons as determined by the terms of account contracts."

[6]Section 16064 provides: "The trustee is not required to report information or account to a beneficiary in any of the following circumstances: [¶] . . . [¶] (b) In the case of a beneficiary of a revocable trust, as provided in Section 15800, for the period when the trust may be revoked."

contingent beneficiaries while the settlor could revoke or modify the trust. During the time the person holding the power to revoke is competent or alive, a trustee has no duty to account to contingent beneficiaries for the period when the trust may be revoked. When the person holding the power to revoke dies, the rights of the contingent beneficiaries are no longer contingent. Those rights, which were postponed while the holder of the power to revoke was alive, mature into present and enforceable rights under division 9, the trust law.

Considered as a whole, the various Probate Code sections impose a duty on the trustee to protect the interests of the persons who are entitled to the proceeds of the trust. One facet of the duty is that the protected persons can compel an accounting. In the case of a revocable trust, two categories of person are protected. While the trust is revocable, the protected person is the settlor. However once the trust becomes irrevocable, such as by the death of the settlor, the beneficiaries become the protected persons. The Law Revision Commission comments explicitly speak about "postponing the enjoyment of rights of beneficiaries of revocable trusts until the death or incompetence of the settlor or other person holding the power to revoke the trust." (Cal. Law Revision Com. com., 54 West's Ann. Prob. Code, *supra*, § 15800, p. 644.)

Accordingly, the actual words of the code sections and Law Revision Commission reveal the will of the Legislature to be that only decedent as settlor could compel an accounting while she was alive and competent. But once decedent died, the right to compel the accounting set out in the code sections passed to the respondents as beneficiaries.

 Regarding the scope of the accounting, the code sections grant broad equitable powers for the protection of beneficiaries. "The matter of determining the appropriate equitable relief to be granted to a beneficiary is generally left to the good judgment of the trial court." (*Rivero* v. *Thomas* (1948) 86 Cal.App.2d 225, 238 [194 P.2d 533].)

The trustee's conduct can be attacked for fraud or bad faith and an accounting compelled for improper acts which had been hidden from the ultimate beneficiaries. (See *Aldrich* v. *Barton* (1902) 138 Cal. 220, 222-223 [71 P. 169]; *Campbell* v. *Folsom* (1945) 70 Cal.App.2d 309, 312 [160 P.2d 906].) "Where a trustee deposits in a single account in a bank trust funds and his individual funds and makes withdrawals from the account, dissipates the money so withdrawn, and subsequently makes additional deposits of his individual funds in the account, the money which the trustee has deposited becomes a trust fund and the beneficiary is entitled to hold the funds so deposited, and it is unnecessary to show an express intent upon the

part of the trustee to replace the trust funds." (*Church* v. *Bailey* (1949) 90 Cal.App.2d 501, 504 [203 P.2d 547], italics omitted; *Noble* v. *Noble* (1926) 198 Cal. 129, 134-135 [243 P. 439, 43 A.L.R. 1235].) Also, section 5202 applies to this case. It provides: "Nothing in this part affects the law relating to transfers in fraud of creditors."

 In the instant case, respondents presented evidence that appellant moved trust funds to the joint checking account and wrote checks on the trust after she ceased to be a trustee. During the same time frame, trust assets fell from a rough value of $450,000 to $132,000 and appellant used the joint checking account for what appear to be personal expenses. Accordingly, respondents made the necessary showing for an accounting of the trust and joint checking account over the entire period of the trust.

## IV. DISPOSITION

The orders defining the rights of respondents as beneficiaries to an accounting are affirmed. Costs are awarded to respondents. Sanctions are denied since it does not appear that the appeal was frivolous or taken solely for delay.

Reardon, J., and McGuiness, J., concurred.

Appellent's petition for review by the Supreme Court was denied February 17, 1999. Mosk, J., Kennard, J., and Baxter, J., were of the opinion that the petition should be granted.