163 Cal.App.4th 1303 (2008)
Estate of JACK HARRY BENNETT, Deceased.
LU ELLA BENNETT et al., Petitioners and Respondents,
v.
SMITH HEAVY INDUSTRIAL TRANSIT CORPORATION et al., Claimants and Appellants.
No. G038208.
Court of Appeals of California, Fourth District, Division Three.
June 13, 2008.
*1305 Law Offices of Kent Vallette, Kent Leeds Vallette; Law Offices of Duff S. McEvers, Duff S. McEvers; Rutan & Tucker, Theodore I. Wallace, Jr., and Treg A. Julander for Claimants and Appellants.
Law Offices of Michael R. Lawler, Michael R. Lawler, Jr., Robert B. Houssels; Howard Rice Nemerovski Canady Falk & Rabkin, Bobbie J. Wilson, Sarah M. King and Christopher Kao for Petitioners and Respondents.
OPINION
RYLAARSDAM, Acting P. J.
Claimants Smith Heavy Industrial Transit Corporation and Advanced Development Holdings, Inc. (collectively Smith), appeal from a probate court order granting the motion of petitioners Lu Ella Bennett, Jack H. Bennett, Jr., and Louise Comer to set aside and rescind a settlement agreement and an assignment of their interests in the estate of Jack Harry Bennett (decedent). (Prob. Code, § 11604; all further statutory references are to the Probate Code unless otherwise indicated.) In addition, Smith filed a motion in this court to take evidence and make findings. (Code Civ. Proc., § 909; Cal. Rules of Court, rule 8.252.) In response to the latter request, petitioners filed a request for judicial notice. Finally, petitioners moved to strike portions of Smith's reply brief.
Smith attacks the probate court's ruling on several grounds. While we conclude that the court had jurisdiction to determine the enforceability of the settlement and assignment, we nonetheless agree with Smith's claim the court erred in denying its request for an evidentiary hearing and reverse the order on this ground.

*1306 FACTUAL AND PROCEDURAL BACKGROUND
Decedent was married to petitioner Lu Ella Bennett. The couple had several children, including petitioners Jack H. Bennett, Jr., and Louise Comer. They formally dissolved the marriage in October 1989. The next year, decedent married Dolores Caballero. He died in March 1992, but no estate proceedings were filed.
During the 1970's, decedent had acquired interests in several lots in Harbor City, California that are covered by oil leases with drilling operations currently conducted by a company named Brea Cañon Oil Company, Inc. In addition, Robert L. Pike and Richard C. Goodman obtained a $171,000 default judgment against decedent in 1984. Pike and Goodman renewed the judgment in September 1993.
In 2002, Pike and Goodman assigned the judgment to R&B Land Acquisition & Development, Inc. (R&B), an entity they jointly owned. R&B renewed the judgment a second time in July 2003.
Also in 2003, Smith entered into a written contract with R&B, agreeing to disclose to R&B "[o]pportunities that it has learned regarding ... property subject to the lien and foreclosure" of the judgment against decedent in return for one-half of "the net proceeds obtained from foreclosure under the ... [j]udgment...." Under the agreement, "R&B ... ha[d] the right to approve whether or not any [o]pportunity ... presented by Smith ... shall be foreclosed on" and, if R&B rejected an "[o]pportunity" in writing, it would "revert to Smith" for "use as it [saw] fit...."
That same year, R&B obtained a writ of execution against one of decedent's Harbor City lots. By then, the judgment exceeded $669,000. One year later, Smith purchased this lot at a sheriff's sale for $476,000. R&B assigned the judgment to Smith in 2005.
In December 2003, Smith sued petitioners and also recorded a notice of lis pendens against Lu Ella Bennett's Newport Beach home.
The verified complaint alleged Smith, "[f]rom and after April 2003, ... was, by assignment, the holder of" the judgment against decedent. The first count alleged decedent had "transferred or conveyed" the Newport Beach residence to a living trust and then to Lu Ella Bennett without payment of any consideration, and that she received title to the property "with knowledge" decedent "intended to hinder, delay, or defraud the collection of [Smith's] ... [j]udgment." A second count alleged a conspiracy between decedent and petitioners to transfer title of the Newport Beach residence to *1307 Lu Ella Bennett. The complaint sought to set aside "the transfer and conveyance" of the real property "to the extent necessary to satisfy [p]laintiff's [j]udgment," a determination that the judgment "be declared a lien on the real property," and for the property to be subject to attachment.
In April 2004, the parties, through counsel, settled the lawsuit with Smith "dismiss[ing] with prejudice" the pending lawsuit and withdrawing the lis pendens in return for petitioners' agreement "to assign [to Smith] any and all rights as heirs and beneficiaries to" decedent's estate. Petitioners also executed an irrevocable assignment of their interests in decedent's estate to Smith. The validity of the settlement and assignment and the probate court's order invalidating them is the subject of this appeal.
In late 2005 and early 2006, Smith, petitioner Lu Ella Bennett, and Caballero filed separate petitions to probate decedent's estate. The probate court chose Caballero to be the administrator.
Petitioners filed a motion under section 11604 to set aside and rescind the April 2004 settlement agreement and assignment of their interests in decedent's estate. They argued Smith obtained the settlement and assignment without giving adequate consideration and through fraud or duress, and that they executed these documents under a mistake of fact. Petitioners supported the motion with their declarations that included the following assertions: (1) Decedent and petitioner Lu Ella Bennett separated in April 1983; (2) petitioners believed Smith's representation that Smith "had been assigned th[e] judgment against [decedent]"; (3) each petitioner "was positive" decedent "did not own any property when he ... divorced" Lu Ella Bennett or "when he died"; and (4) Smith also represented to them that decedent "did not own any property."
In opposing the motion, Smith argued the Probate Code did not permit the court to rule on the motion "without a trial or evidentiary hearing on the merits," and petitioners' motion "bespeaks nothing but factual issues which require determination after [a] full evidentiary hearing during which documentary evidence and testimony will have to be presented." The opposition was supported by four declarations and numerous exhibits, which made the following factual assertions: (1) Caballero testified in a deposition that decedent began living with her during the 1960's and never returned to Lu Ella Bennett; (2) in her deposition, Lu Ella Bennett admitted decedent moved out of their home in 1977, returning only for a six-month period in late 1982 and early 1983; (3) she also admitted never speaking to anyone at Smith, was positive decedent did not own real property when they divorced, and signed the settlement and assignment because she was sure he did not own any property; (4) in late 2001, a Smith representative spoke with one of *1308 Lu Ella Bennett's children and a realtor Lu Ella Bennett knew, and offered to purchase her interest in Harbor City properties, but was told that, for personal reasons, she was not interested in completing the sale; (5) during negotiations over the settlement and assignment, neither Smith's officers nor its attorney spoke directly to any of the petitioners; and (6) its attorney did not make any representations to petitioners' counsel about decedent's property interests.
Richard C. Jones, Smith's owner, submitted a declaration claiming the written agreement with R&B "authorized [Smith] to use the [j]udgment owned by R & B...." Citing the oil leases, Jones asserted he could not "put any realistic value on the Harbor City properties." Finally, Jones claimed a 1987 deed transferring decedent's interests in the Harbor City properties to a person named John Tuttle had recently been recorded, and "[i]f that [d]eed is otherwise valid, it could mean ... there are no properties of [decedent] remaining to be probated and the [e]state might end up with no assets."
Petitioners also filed a reply containing a declaration by Steven L. Stern, the attorney that represented them in the Smith action. Stern claimed Duff McEvers, Smith's attorney, represented that "Smith ... was not aware of any ... assets" decedent owned before his divorce or at his death, and that "Smith ... did in fact hold a judgment against [decedent]." Each party filed evidentiary objections to the opposing party's supporting declarations.
At the hearing on the motion, Smith's attorney repeated his contention "this has to be done by [an] evidentiary hearing[]," noting "[a]ll you have [are] declarations where everybody contradicts each other...." After listening to argument, the court took the matter under submission. Subsequently, it granted the motion by minute order.

DISCUSSION

1. The Lack of an Evidentiary Hearing

Smith's first claim is that "[t]he evidence before the trial court created material issues of fact on each of the[] alleged grounds of the [r]escission [m]otion," and therefore the court "erred in failing to accord ... an evidentiary hearing where live witnesses would testify." Citing section 11604's authorization of a motion to challenge the validity of a transfer or agreement, and Code of Civil Procedure section 2009's authorization of the use of declarations "upon a motion," petitioners contend the probate court properly decided this matter on the parties' declarations. We conclude the probate court erred in failing to conduct an evidentiary hearing.
(1) It has long been the rule that in probate matters "affidavits may not be used in evidence unless permitted by statute. [Citation.]" (Estate of Fraysher *1309 (1956) 47 Cal.2d 131, 135 [301 P.2d 848].) Consequently, "when challenged in a lower court, affidavits and verified petitions may not be considered as evidence at a contested probate hearing. [Citations.]" (Evangelho v. Presoto (1998) 67 Cal.App.4th 615, 620 [79 Cal.Rptr.2d 146]; see also Estate of Duncan (1969) 1 Cal.App.3d 212, 215 [81 Cal.Rptr. 568] ["This was a contested hearing" and "[i]n the absence of a stipulation, each allegation of the verified petitions and the facts in the affidavit filed in support ... had to be established by competent evidence"].)
Under section 1000, "Except to the extent that this code provides applicable rules, the rules of practice applicable to civil actions ... apply to, and constitute the rules of practice in, proceedings under this code." In addition, "All issues of fact joined in probate proceedings shall be tried in conformity with the rules of practice in civil actions." (Ibid.) While it is true Code of Civil Procedure section 2009 generally permits the use of affidavits in hearings on motions in civil litigation, the Probate Code limits the use of affidavits to "uncontested proceeding[s]." (Prob. Code, § 1022.)
Estate of Wallace (1977) 74 Cal.App.3d 196 [141 Cal.Rptr. 426] rejected the very claim petitioners present here, that Code of Civil Procedure section 2009 authorizes the use of declarations to decide a motion filed in a probate matter. (Estate of Wallace, supra, 74 Cal.App.3d at p. 201.) Petitioners seek to distinguish Wallace on the ground that the predecessor statute to section 1000 then in effect incorporated only certain portions of the Code of Civil Procedure into probate proceedings and section 2009 of that code was not among the incorporated provisions. In contrast, section 1000 generally incorporates all of "the rules of practice applicable to civil actions...." (§ 1000.) But this argument ignores that statute's introductory phrase, "Except to the extent that this code provides applicable rules...." (Ibid.) Current section 1022 authorizes the use of declarations only in an "uncontested proceeding." Thus, while sections 1000 and 1022 are not identical to the former statute, the holding in Wallace still applies.
(2) It is true the restriction on the use of declarations in contested probate hearings is inapplicable when "the parties d[o] not object to the use of affidavits in evidence and both parties adopt[] that means of supporting their positions." (Estate of Fraysher, supra, 47 Cal.2d at p. 135; see Evangelho v. Presoto, supra, 67 Cal.App.4th at p. 620.) But here, Smith, while opposing the motion on the merits, also asserted in written opposition and at the hearing that the factual conflicts presented by the parties' competing declarations mandated an evidentiary hearing. Consequently, the issue was preserved for review in this case.
Petitioners contend that, even assuming "an evidentiary hearing is required for the resolution of disputed facts in motions" under section 11604, any error *1310 in this case was harmless. Citing the lack of an assignment of the default judgment to Smith, the purported unenforceability of that judgment and allegedly improper manner in which Smith attempted to enforce it, plus the potential value of decedent's interest in the Harbor City properties, petitioners argue "there was ample undisputed or indisputable evidence supporting the [p]robate [c]ourt's [o]rder." We disagree.
(3) The claim against decedent had been reduced to a judgment before he died, thereby rendering the statute of limitations on a "cause of action" where the "person against whom [the] action may be brought ... dies" (Code Civ. Proc., § 366.2, subd. (a)) inapplicable. Furthermore, Smith's action against petitioners sought to set aside the transfer of decedent's interest in the Newport Beach residence, allegedly because it constituted a fraudulent conveyance, not to enforce the judgment in violation of section 9301. Because the parties executed a written settlement, petitioners had the burden of establishing that agreement lacked consideration. (Civ. Code, § 1614.) Where the parties agree to settle a bona fide dispute, their agreement is not lacking consideration simply because it is later determined the claim was not well founded. (Stub v. Belmont (1942) 20 Cal.2d 208, 217-218 [124 P.2d 826]; Miller v. Johnston (1969) 270 Cal.App.2d 289, 299-300 [75 Cal.Rptr. 699].) The petitioners acknowledged they agreed to the settlement, in part, because they were "positive" decedent owned no property either when he divorced Lu Ella Bennett or when he died. For the same reasons, petitioners' alternative argument that the record establishes duress as a matter of law also lacks merit. (CrossTalk Productions, Inc. v. Jacobson (1998) 65 Cal.App.4th 631, 644 [76 Cal.Rptr.2d 615] [requirements for economic duress present questions of fact].)
(4) Thus, we conclude the probate court committed reversible error in denying Smith's request for an evidentiary hearing on petitioners' motion to set aside and rescind the settlement agreement.

2. The Remaining Issues

In light of our conclusion the trial court erred by not conducting an evidentiary hearing on petitioners' motion, some of the remaining issues presented in this appeal, such as the sufficiency of the evidence to support it and petitioners' standing to seek relief under section 11604, need not be considered. However, Smith also contends the probate court exceeded its jurisdiction by setting aside and rescinding the settlement and assignment. Because the scope of the probate court's authority will be an issue upon remand, we proceed to resolve this question.
*1311 Section 11604 allows the probate court to "inquire into the circumstances surrounding the execution of, and the consideration for, the transfer, agreement, request, or instructions, and the amount of any fees, charges, or consideration paid or agreed to be paid by the beneficiary." (§ 11604, subd. (b).) In addition the statute provides, "The court may refuse to order distribution, or may order distribution on any terms that the court deems just and equitable, if the court finds either of the following: [¶] (1) The fees, charges, or consideration paid or agreed to be paid by a beneficiary are grossly unreasonable. [¶] (2) The transfer, agreement, request, or instructions were obtained by duress, fraud, or undue influence." (§ 11604, subd. (c).)
Smith contends section 11604 allows a probate court to only affect distribution of the estate, and thus the court lacked the power to rescind and set aside the settlement and assignment. Not so.
(5) In Estate of Stanley (1949) 34 Cal.2d 311 [209 P.2d 941], the Supreme Court rejected claims that former section 1020.1, section 11604's predecessor, did not grant a probate court jurisdiction to decide the validity and enforceability of a distribution agreement or that its authority to do so extended only to property that is part of the estate. "It must be remembered that a probate court has jurisdiction to determine rights under contracts ancillary to the exercise of its probate jurisdiction. [Citations.] ... `The superior court, while sitting in matters of probate, is the same as it is while sitting in equity, in cases at law, or in a special proceeding, and when it has jurisdiction of the subject matter of a case falling within either of these classes, it has power to hear and determine, in the mode provided by law, all questions of law and fact, the determination of which is ancillary to a proper judgment in such case.'" (Id. at p. 319; see also Estate of Baglione (1966) 65 Cal.2d 192, 197 [53 Cal.Rptr. 139, 417 P.2d 683] ["In the exercise of its legal and equitable powers ..., a superior court sitting in probate that has jurisdiction over one aspect of a claim to certain property can determine all aspects of the claim." (citation omitted)].)
Also, in Estate of Freeman (1965) 238 Cal.App.2d 486 [48 Cal.Rptr. 1], the claimants under a will that left them some of the testator's personal effects claimed entitlement to the residue of the estate after the will's residuary clause failed. They induced the testator's sole legal heir to execute an agreement granting them the bulk of the residual assets. The probate court granted the heir's motion to set aside the agreement and the Court of Appeal affirmed.
Analyzing the scope of the probate court's authority under former section 1020.1, the appellate court declared that, while generally "the compromise and release of a claim advanced in good faith is a good and valuable *1312 consideration which suffices to support a compromise agreement, even though later developments may prove the claim to have been ill-founded," "in the compromise of a claim to an estate falling within the scope of [former] ... section 1020.1, the usual rule has been modified by statute, and the court is specifically directed to inquire into the reasonableness of the consideration in the compromisethat is to say, value received, in relation to value given." (Estate of Freeman, supra, 238 Cal.App.2d at p. 490.) Thus, under the statute, "The probate court can set the entire agreement aside, or it can modify it to the extent it finds the consideration grossly unreasonable. [Citation.]" (Id. at pp. 489-490; see also Estate of Peterson (1968) 259 Cal.App.2d 492, 495, 500, 505-506 [66 Cal.Rptr. 629] [affirmed order setting aside settlement and assignment found to be result of mistake of fact and lacking adequate consideration].)
(6) It is true many cases applying section 11604 or its predecessor modified the distribution of an estate's assets rather than rescinding the agreement altogether. (Burchell v. Strube (1955) 43 Cal.2d 828, 831 [279 P.2d 1] [reducing heir hunter's fee from 40 percent of the estate to only 10 percent]; Estate of Freeman, supra, 238 Cal.App.2d at p. 488 [modifying distribution from 60-40 division in favor of claimants to 80-20 in favor of heir at law]; Estate of Peterson, supra, 259 Cal.App.2d at p. 496 [dividing estate into one-third shares].) But in Estate of Simmons (1963) 217 Cal.App.2d 580 [31 Cal.Rptr. 861], the court upheld an order denying distribution to the assignee of the heirs at law after finding the assignments were obtained without consideration. (Id. at pp. 584, 586-587.) Thus, if after conducting an evidentiary hearing the probate court concludes any one of petitioners' grounds for invalidating the settlement and assignment has merit, it has the discretion to either modify the parties' agreement or rescind it.

3. The Motion to Take Evidence on Appeal and Request for Judicial Notice

Smith filed a motion under Code of Civil Procedure section 909 and California Rules of Court, rule 8.252 concerning newly discovered evidence relevant to petitioners' standing to file the motion to set aside and rescind the settlement and assignment. In response, petitioners filed a request for judicial notice of certain pleadings. In light of our conclusion the probate court must conduct an evidentiary hearing on petitioners' motion, we deny both of these requests.

4. The Motion to Strike Portions of Smith's Reply Brief

Finally, petitioners filed a motion to strike portions of Smith's reply brief on the ground it asserts four new arguments. The motion is denied. Even assuming petitioners' new issue claim is correct, it is well settled appellate *1313 courts do not consider issues first presented in an appellant's reply brief. (In re Marriage of Ackerman (2006) 146 Cal.App.4th 191, 214 [52 Cal.Rptr.3d 744].) Furthermore, in light of our decision to remand the matter for an evidentiary hearing, these contentions may be asserted at that time.

DISPOSITION
The order is reversed. The parties shall bear their own respective costs on appeal.
O'Leary, J., and Fybel, J., concurred.