Filed 12/2/20; On remand

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| Conservatorship of the Person of O.B. | 2d Civil No. B290805 (Super. Ct. No. 17PR00325) (Santa Barbara County) |
| T.B. et al., as Coconservators, etc., | |
|     Petitioners and Respondents, | OPINION ON REMAND |
| v. | |
| O.B., | |
|     Objector and Appellant. | |

      In *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1012, the California Supreme Court reversed the judgment rendered in our prior opinion filed on February 26, 2019. The court remanded the cause to us with directions "to reevaluate the sufficiency of the evidence in light of [its] clarification" of how an appellate court should review a "finding made by the trier of fact pursuant to the clear and convincing standard." (*Id.*, at pp. 995, 1012.) As directed, we have reevaluated the sufficiency of the evidence in accordance with the Supreme Court's clarification of the standard

of review.  We conclude that the evidence is sufficient.

O.B. is a person with autism spectrum disorder (autism).[1] She appeals from an order establishing a limited conservatorship of her person and appointing respondents T.B., her mother (mother), and C.B., her elder sister, as conservators.  Appellant's principal contentions are (1) the probate court acted in excess of its jurisdiction by modifying her special education plan, and (2) the evidence is insufficient to support the probate court's findings.

A person with autism is not automatically a candidate for a limited conservatorship.  Each case requires a fact-specific inquiry by the probate court.  "Autism is known as a 'spectrum' disorder because there is wide variation in the type and severity of symptoms people experience."  <https://www.nimh.nih.gov/health/topics/autism-spectrum-disorders-asd/index.shtml> [as of Nov. 17, 2020], archived at <https://perma.cc/UQ4C-5VE3>. Based on the facts here, we affirm the order establishing a limited conservatorship of appellant's person.

*Factual and Procedural Background*

The limited conservatorship was imposed after a contested evidentiary hearing (also referred to herein as "trial").  Our

---

[1] "Autism spectrum disorder is characterized by persistent deficits in social communication and social interaction across multiple contexts, including deficits in social reciprocity, nonverbal communicative behaviors used for social interaction, and skills in developing, maintaining, and understanding relationships.  In addition to the social communication deficits, the diagnosis of autism spectrum disorder requires the presence of restricted, repetitive patterns of behavior, interests, or activities." (American Psychiatric Assn., Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013) p. 31.)

summary of the facts is based on evidence presented at the trial in the form of testimony and exhibits.  We disregard respondents' summary of the facts based upon reports and declarations that were neither offered nor received in evidence.  During the parties' closing argument, the probate court made clear that it would consider only evidence presented at the trial:  "We have had lengthy proceedings outside of the evidentiary proceeding, so you need to limit your arguments to the record inside of the evidentiary proceeding."  (See also Prob. Code, § 1046 ["The court shall hear and determine any matter at issue and any response or objection presented, *consider evidence presented*, and make appropriate orders" (italics added)].)[2]  Moreover, because the evidentiary hearing was contested, declarations were inadmissible pursuant to section 1022.[3]

---

[2] Unless otherwise stated, all statutory references are to the Probate Code.

[3] Section 1022 provides, "An affidavit or verified petition shall be received as evidence when offered in an uncontested proceeding under this code."  "[S]ection 1022 authorizes the use of declarations only in an 'uncontested proceeding.'" (*Estate of Bennett* (2008) 163 Cal.App.4th 1303, 1309.)  "When a petition is contested, as it was here, . . . absent a stipulation among the parties to the contrary, each allegation in a verified petition and each fact set forth in a supporting affidavit must be established by competent evidence.  [Citations.]" (*Estate of Lensch* (2009) 177 Cal.App.4th 667, 676.)  On the other hand, a declaration or report received in evidence without objection at a contested hearing may properly be considered as competent evidence.  (See *Estate of Nicholas* (1986) 177 Cal.App.3d 1071, 1088.)  Here, no one objected to the exhibits received in evidence.

In August 2017 respondents filed a verified petition requesting that they be appointed limited conservators of appellant's person. The petition alleged that appellant had been diagnosed with autism and "is unable to properly provide for . . . her personal needs for physical health, food, clothing, or shelter."

When the petition was filed, appellant was 18 years old. She was living with her great-grandmother in Lompoc, County of Santa Barbara, and was repeating the 12th grade at Cabrillo High School. She had been living with her great-grandmother since she was three or four years old. Mother resided in Orange County.

An expert witness, Dr. Kathy Khoie, testified on appellant's behalf. Khoie, a psychologist, opined that appellant "is not a candidate for conservatorship." Khoie explained: "My opinion is based on her intellectual functioning level. I believe that [she] has at least average intelligence. She's high average in her non-verbal functioning." "[S]he is verbal. She's able to talk about her likes and dislikes." In her report, Khoie concluded that although appellant "has a diagnosis of Autism Spectrum Disorder," she "has the potential to live independently with support. She does not require a high level of supervision and decision making by a conservator."

In her report Khoie said she had reviewed the "Conservator Evaluation" report of the "Tri-Counties Regional Center." The regional center report, which was neither offered nor received in evidence, was prepared by David Jacobs, Ph.D. Section 1827.5, subdivision (a) provides that the proposed limited conservatee, "with his or her consent, shall be assessed at a regional

4

center . . . . The regional center shall submit a written report of its findings and recommendations to the court."[4] Khoie stated: "Dr. Jacobs recommended limited conservatorship concerning habilitation, education/training, medical and psychological services; access to confidential records, and the right to enter into a contract. Recommended power for education and medical treatment were reiterated. Dr. Jacobs did not recommend conservatorship for decision regarding place of residence." Since Dr. Khoie's report was received in evidence without objection, we may consider her report's reference to Dr. Jacobs' recommendations even though Dr. Jacobs' report was not received in evidence. (See *Estate of Nicholas*, *supra*, 177 Cal.App.3d at p. 1088.)

Appellant's other expert witness, Christopher Donati, is the probate investigator for the Santa Barbara County Public Guardian's Office. Pursuant to a "non-court ordered" referral, he met with appellant and evaluated her "to determine if conservatorship was appropriate." Appellant said she "was opposed to the idea of a conservatorship." She wanted to continue living with her great-grandmother in Lompoc and continue attending Cabrillo High School. Donati spoke to

_____

[4]See Cal. Conservatorship Practice (Cont.Ed.Bar 2018 update) § 22.7 D. Role of Regional Center: "The regional center plays a very significant role in the establishment of a limited conservatorship. Before a limited conservatorship is created, the regional center performs an assessment of the proposed limited conservatee and submits a written report of its findings and recommendations to the court. [Citations.]" "[T]he regional center report is required before the court can proceed to decide the petition for a limited conservatorship."

mother, who said "she was hoping to move [appellant] and have her attend a different educational institution and begin regional services where [mother] resides [in Orange County]." Donati opined that he did not "see any . . . way that the conservatorship would benefit [appellant] at this point." His primary concern was the removal of appellant from her great-grandmother's home. The removal could cause her to "experience trauma."

Donati reviewed Dr. Jacobs' regional center report as well as the "capacity declaration by Dr. [Cindy] Blifeld." Her declaration was neither offered nor received in evidence, but Donati testified that Dr. Blifeld's declaration contained the required "medical component [for a limited conservatorship] where a medical professional is in support of a conservatorship and [declares] that they feel that the . . . potential conservatee lacks capacity." Dr. Blifeld "did feel that . . . [appellant] lacked capacity." Donati continued: "There seemed to be conflicting reports where certain professionals felt . . . that she did lack capacity. And I believe Dr. Khoie was a professional that felt like she did have capacity and the conservatorship was not appropriate. So there seemed to be conflicting information."

L.K. is appellant's 82-year-old great-grandmother. She testified that, since the conservatorship proceedings began, appellant has been "a nervous wreck." L.K. opined that appellant does not need a conservatorship and can take care of herself "[a]s much as any teenager can." She also opined that it was "a bad idea for [appellant] to live with her mom and her dad and her sisters" because "[s]he's afraid of them. She's afraid that she won't be able to come back and see me." "Her mother yells and swears at her and takes her electronics . . . away from her."

6

Mother testified: For the past 10 years, she has had "[n]early daily" contact with appellant. Mother lives with appellant's father and two sisters in a "large five bedroom home" in Orange County. She "filed the petition to basically protect [appellant] from the school [Cabrillo High School in Lompoc] and then long term just [to] protect her." Appellant "has had . . . like 160 missed class periods, but she still manages to get passing grades, even high grades, in all of her academics." Mother referred to the grades as "'get this kid out of my class' grades." "[S]he's not in class to earn the grades. She's not producing work to earn the grades." Sometimes the school placed appellant in detention for the entire day.

If the requested conservatorship were established, mother said appellant would attend El Modena High School in the Orange County School District. Mother asserted that this school is "one of the highest rated schools in the district and has a really good reputation for their special education program." Mother spoke to the "special education coordinator of the district."

Mother further testified: Appellant needs guidance in making routine decisions and assistance in performing daily tasks. Appellant "really struggles with taking in information needed to make decisions." Mother needs to ask her, "'Are you going to wear a sweater today? Are you putting on clean underwear? Are you going to brush your hair? Did you brush your teeth? Did you take your pills? . . . Is it hot out? Do you need to wear shorts?'" Appellant asks mother, "'Can you lay my clothes out for me. . . . Can you turn the shower on.'" Mother, appellant's father, or her great-grandmother "handles her medication." Appellant cannot cook or do her laundry. Appellant has "behavioral outbursts" where she will "run off or scream and

7

yell." She "screams and yells and fights and gets her way no matter what she does, . . . and it stresses her out and makes her upset."

Mother also testified that appellant is too trusting of other people. She will trust "people who are just nice to her . . . . She will go off with people she shouldn't and trust people she shouldn't. It's dangerous." Two years ago, appellant "ran off" to see "Sponge Bob on Hollywood Boulevard." She trusts Sponge Bob.[5] She also trusts "all of her family and anyone at school, anyone she's seen before, people at restaurants, restaurant staff." If a person she trusts asks her to sign a document, "she'll just sign it no matter what." If "you're explaining [the document], she doesn't really care."

Tammi L. Faulks, appellant's guardian ad litem, filed an action against the Lompoc Unified School District claiming that appellant had not "received the education to which she was entitled." Faulks sought to "get the school district to either set aside a compensatory education fund [for appellant] or allow [her] to continue to obtain high school services and all of the benefits that go with that until she's age 22." Faulks told the court she was "very worried that [school employees] seem to . . . do whatever it takes to push [appellant] out of the school regardless of whether she gets a proper education."

---

[5]Pursuant to Evidence Code sections 452, subdivision (h) and 459, we take judicial notice that "SpongeBob is depicted as being a good-natured, optimistic, naïve, and enthusiastic yellow sea sponge residing in the undersea city of Bikini Bottom alongside an array of anthropomorphic aquatic creatures." <https://en.wikipedia.org/wiki/SpongeBob_SquarePants_ (character)> [as of Nov. 17, 2020], archived at <https://perma.cc/6BRH-UTRQ>.

During closing argument, respondents' counsel stated that appellant "has had 312 unexcused class absences this year, so far, and numerous suspensions." No one objected to this statement. Appellant's guardian ad litem said, "[I]t's true that she's missed over 300 class periods . . . this school year."

The trial court found that a limited conservatorship "is appropriate" and that appellant "is unable properly to provide for . . . her personal needs for physical health, food, clothing, or shelter." The court also found that she "lacks the capacity to give informed consent for medical treatment." The court remarked that appellant's treatment at Cabrillo High School has "been a failure of the education system for her." The court characterized this remark as "just dicta because the County of Santa Barbara Education Office" and the "Lompoc Unified School District [are] not . . . part[ies] to this action." None of the parties requested a statement of decision.

*Limited Conservatorship*

"A limited conservator of the person . . . may be appointed for a developmentally disabled adult. A limited conservatorship may be utilized only as necessary to promote and protect the well-being of the individual, shall be designed to encourage the development of maximum self-reliance and independence of the individual, and shall be ordered only to the extent necessitated by the individual's proven mental and adaptive limitations. The conservatee of the limited conservator shall not be presumed to be incompetent and shall retain all legal and civil rights except those which by court order have been designated as legal disabilities and have been specifically granted to the limited conservator." (§ 1801, subd. (d).)

9

Section 2351.5, subdivision (b)(7) provides that, "in its order appointing the limited conservator," the probate court may grant to the conservator the power to make "[d]ecisions concerning the education of the limited conservatee." The probate court expressly granted this power to respondents.

Appellant argues: The probate court's "jurisdiction was preempted by the Federal and State Education Statutes." (Bold and capitalization omitted.) "[T]he [probate] court . . . lacked the ability to modify or alter the special education plan instituted by the local school district under requirements established under federal and state education statutes." "As a result, . . . the [probate] court's order granting [respondents'] petition, which prevented [appellant] from . . . graduating from Cabrillo High School, and resulted in the removal of [appellant] from both her school and her home, exceeded the court's jurisdiction and was legally invalid."

Appellant's argument lacks merit. The probate court did not modify her special education plan. As authorized by section 2351.5, subdivision (b)(7), the court merely granted to the limited conservators the power to make decisions concerning her education. The court stated, "I'm not involved in her education, really, at all, except to the extent that if I impose the . . . limited conservatorship, . . . that might affect who gets to talk about her education."

Appellant has not cited authority prohibiting the establishment of a limited conservatorship solely because it may result in an adult student's transfer from a school that has failed to meet her educational needs. "'It is a fundamental rule of

10

appellate review that the judgment appealed from is presumed correct and "'"all intendments and presumptions are indulged in favor of its correctness."' [Citation.]" [Citation.] An appellant must provide an argument and legal authority to support his contentions. . . .'" (*Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 799.)

*Substantial Evidence Supports the Establishment*
*of a Limited Conservatorship of Appellant's Person*

At the hearing on a petition for appointment of a limited conservator of the person, the court shall make the appointment "[i]f the court finds that the proposed limited conservatee lacks the capacity to perform *some*, but not all, of the tasks necessary to provide properly for his or her own personal needs for physical health, food, clothing, or shelter, or to manage his or her own financial resources . . . ." (§ 1828.5, subd. (c), italics added.) Appellant contends that the evidence is insufficient to support the required findings.

The "clear and convincing" standard of proof applies to the appointment of a limited conservator. (§ 1801, subd. (e).) "[A]n appellate court must account for the clear and convincing standard of proof when addressing a claim that the evidence does not support a finding made under this standard. When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true. In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in

11

the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at pp. 1011-1012.

The record as a whole contains substantial evidence, in the form of mother's testimony, from which a reasonable factfinder could have found it highly probable that appellant "lacks the capacity to perform *some* . . . of the tasks necessary to provide properly for . . . her own personal needs for physical health, food, clothing, or shelter, or to manage . . . her own financial resources . . . ." (§ 1828.5, subd. (c), italics added.) "The testimony of one witness may be sufficient to support the findings." (*Conservatorship of B.C.* (2016) 6 Cal.App.5th 1028, 1034.)

We recognize that appellant's experts, Dr. Khoie and Donati, opined that a limited conservatorship is inappropriate. But "[a]n appellate court . . . will sustain the trial court's factual findings if there is [the requisite] substantial evidence to support those findings [under the clear and convincing standard of proof], even if there exists evidence to the contrary. [Citation.]" (*Conservatorship of Amanda B.* (2007) 149 Cal.App.4th 342, 347.) Because mother was in nearly daily contact with appellant for the past 10 years, mother was in a far better position than Dr. Khoie and Donati to evaluate appellant's capacity to function independently.

Although mother's testimony alone is sufficient, additional evidence supports the trial court's findings. Dr. Khoie's and Donati's opinions conflict with the regional center evaluation prepared by Dr. Jacobs, who recommended a limited conservatorship. Their opinions also conflict with Dr. Blifeld's evaluation of appellant. Donati testified that Dr. Blifeld had provided the required "medical component [for a limited

12

conservatorship] where a medical professional is in support of a conservatorship and [declares] that they feel that the . . . potential conservatee lacks capacity."

Moreover, in deciding to appoint a limited conservator of appellant's person, the probate court took into account its personal observations of appellant during the proceedings. The court stated: "I've been involved in numerous hearings, and [appellant] has been at all of them or most of them. So in addition to some of the different witnesses[,] I am entitled to base my decision . . . in part on my own observation of [appellant] at the proceedings."

We reject appellant's assertion that "[t]he fact that the trial court 'observed' [appellant] - who was sitting right in front of him - over a ten month period [citation], proves nothing." The court's personal observations of appellant contribute to the substantial evidence in support of its findings. (See *People v. Rodas* (2018) 6 Cal.5th 219, 234 ["when a competency hearing has already been held, [in determining whether to conduct a second competency hearing] 'the trial court may appropriately take its personal observations into account in determining whether there has been some significant change in the defendant's mental state,' particularly if the defendant has 'actively participated in the trial' and the trial court has had the opportunity to observe and converse with the defendant"].) The probate court had the opportunity to observe and converse with appellant. (See also *People v. Fairbank* (1997) 16 Cal.4th 1223, 1254 ["substantial evidence, including the trial court's own observations of defendant, supports the court's factual determination that defendant was not intoxicated at the time he entered his guilty plea and that his plea was knowing, intelligent, and voluntary"].)

*The Probate Court Did Not Violate Principles*
*of Conservatorship Law*

Appellant claims that the probate "court's actions and orders violated basic principles under the State Conservatorship Statute." (Bold and capitalization omitted.) "[O]f particular significance, the [probate] court's conservatorship order ignored or disregarded the wishes and desires of [appellant] herself, contrary to both the letter and the spirit of conservatorship statutes."

The probate court considered appellant's personal preferences. Although appellant did not testify, the court permitted her to explain at length in open court why she wanted to stay in Lompoc and attend Cabrillo High School. The court was not required to accede to her wishes.

Appellant argues that the probate court "failed to consider the clear availability of less restrictive alternatives to a conservatorship." (Bold and capitalization omitted.) "No conservatorship of the person . . . shall be granted by the court unless the court makes an express finding that the granting of the conservatorship is the least restrictive alternative needed for the protection of the conservatee." (§ 1800.3, subd. (b).) The probate court expressly made this exact finding. Appellant does not cite authority requiring the court to set forth on the record the less restrictive alternatives to a conservatorship that it considered. "Because such express findings are not required, we presume the court followed the law in making its determination [citation], including a consideration of [less restrictive alternatives]." (*Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 698-699; see also *Wilson v. Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554, 563 ["it is presumed that the

court followed the law. . . . The mere fact that the court did not explicitly refer to [Cal. Rules of Court,] rule 203.5(e), when the statute contains no such requirement does not support the conclusion that it was ignored"].)

*The Probate Court Did Not Prejudge the Case*

Appellant contends, "[T]he statements and actions by the [probate] court demonstrate that it had already prejudged the case, and the purported need for a conservatorship." In support of her contention, appellant refers to the court's remarks at a pretrial hearing concerning "[a] placement decision," i.e., "whether or not [appellant] stays at Cabrillo [High School] or she goes down to a high school in Orange County." The court said appellant's counsel should "be prepared to show cause why I shouldn't impose a permanent conservatorship on the date of the [upcoming trial] because . . . . I believe that the mother has shown a prima facie case [at the pretrial hearing] of why a permanent conservatorship is probably appropriate." "A prima facie showing is one that is sufficient to support the position of the party in question." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 851.) The court continued, "So . . . you need to make sure that if you object to that, . . . you make it clear to both sides and to the Court on that day [the day of trial] that you don't want a conservatorship because when that day is over, I'm going to probably impose one, unless you change my mind." Appellant's counsel replied, "Understood, Your Honor."

The probate court's statements do not demonstrate that it prejudged the limited conservatorship issue before hearing the evidence at trial. As a courtesy to appellant, the court informed her counsel that at the pretrial hearing mother had made a prima facie case that a limited conservatorship "is *probably*

15

appropriate." (Italics added.)  Thus, the court warned counsel that at trial she should be prepared to present evidence showing that a limited conservatorship is not appropriate.  The court made clear that it would not make up its mind until it had heard all of the evidence.

*Disposition*

The order establishing a limited conservatorship of appellant's person and appointing respondents as conservators is affirmed.  The parties shall bear their own costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>


                                                    YEGAN, J.


We concur:


        GILBERT, P. J.


        PERREN, J.


16

James Rigali, Judge

Superior Court County of Santa Barbara

_____

Gerald J. Miller, under appointment by the Court of Appeal for Appellant.

Law Offices of Laura Hoffman King and Laura Hoffman King; Tardiff Law Offices and Neil S. Tardiff for Respondents.

17