[Civ. No. 20689.   First Dist., Div. Three.   May 1, 1963.]

CONCETTA CUTRERA, Plaintiff and Appellant, v. MAUD McCLALLEN, as Coadministratrix, etc., et al., Defendants and Respondents.

Concetta Cutrera, in pro. per., Andrew P. Smirnoff and Henry Gifford Hardy for Plaintiff and Appellant.

J. Stewart Harrison and Brobeck, Phleger & Harrison for Defendants and Respondents.

SALSMAN, J.—This is an appeal from a judgment obtained by respondents on their cross-complaint, quieting their title to personal property and awarding them $2,959.98 due after an accounting. Appellant brought the action initially to quiet her title to personal property in her possession, which she claimed to have received from Martial Davoust as a gift *causa mortis*. The trial court found that if in fact the property had been given by the decedent to appellant, it was given in trust for the use and benefit of decedent's surviving spouse, Artie V. Davoust, and thereupon entered its decree in favor of respondents, who are administratrices of the estate of Martial Davoust. The decisive issue in the trial court concerned the intention of Martial Davoust at the time

of the events here in question, and we must look to the record to determine if substantial evidence supports the trial court's findings and judgment.

Martial Davoust and his wife Artie V. Davoust were an elderly couple, and in poor health. The record suggests they owned the apartment house where they lived. Appellant and her husband lived in the same apartment house, in an apartment near that of the Davousts. The appellant and the Davousts had been acquainted for several years. It is appellant's claim that because of their age and infirmity, and their friendship, she rendered personal services to the Davousts, such as cooking, cleaning their apartment, and bathing them. On April 25, 1959, at about 7 a.m., appellant heard a noise in the Davoust apartment, and entered to investigate. She found Martial Davoust on the floor, hemorrhaging and unable to rise. She called Dr. McMurdo, the Davoust family physician, who recommended that Martial Davoust be taken to a hospital at once, because in the doctor's opinion he was near death. Before being taken to the hospital Martial Davoust requested appellant to bring to him a box and also some bank books which were in his coat pocket. Appellant brought the box and bank books to Martial Davoust, and he then handed them back to her and said: "I want you to have this and I want you to take care of Artie . . . Take care of Artie and everything while I am gone." Appellant then took possession of the box and bank passbooks. Martial Davoust was taken to a hospital and died the next day. Appellant cared for Artie Davoust for about one month, until respondents were appointed administratrices of the estate of Martial Davoust, and guardians of Artie V. Davoust. Appellant then filed her action to quiet title to the property transferred to her by Martial Davoust. The box contained numerous certificates representing shares of stock and debentures, and the bank account passbooks represented cash deposits exceeding $100,000.

The trial court made three findings which respondents rely upon to sustain the judgment. We discuss here only the finding that the gift was made in trust for the benefit of Artie V. Davoust, because if that finding be sustained it is decisive of the appeal. The finding of the trial court was that "if, in fact, said personal property was given by the said decedent to the plaintiff, said property was given in trust for the use and benefit of decedent's surviving spouse, Artie V. Davoust." We construe this finding to be that a gift

was made to appellant, and the question then becomes one of determining if the evidence supports the court's further finding that the gift was in trust for the benefit of Artie V. Davoust, and appellant has no beneficial interest in the property transferred.

■    Appellant contends there is no conflict in the evidence regarding the issue of a gift *causa mortis*. We cannot agree. There was evidence before the trial court that, while appellant and Martial Davoust had been on friendly terms in the past, and appellant had done acts of kindness for the elderly couple, their relationship had lately become strained and unfriendly.    Appellant had filed a suit against Martial Davoust, charging him with assault and battery; Martial Davoust had filed an action in unlawful detainer against appellant and her husband.    There was also evidence that Martial Davoust was very careful with his money and never spent an extra cent on his health or care, and although his health required it, and at times the doctor recommended it, he consistently refused to go to a hospital for medical and surgical care.    His doctor testified he had been the family physician for some 15 years; that Martial Davoust always compromised his normal medical bills, and that he didn't think the Davousts had any finances at all.    When the emergency of April 25th occurred, Mrs. Davoust, because of her age and infirmity, was unable to render aid.    This is substantial evidence upon which the trial court could find that when Martial Davoust transferred the box and bank books to appellant he did not intend an outright gift to her, but intended only the protection of his spouse and the safekeeping of his valuables while he was in the hospital.    It is true there is evidence in the record, consisting chiefly of the testimony of appellant, from which the trial court could have made a different finding; but we must resolve any conflict in favor of the judgment rendered by the trial court.    We must infer that the trial court found the words "take care of Artie and everything while I am gone" to show an intention on the part of Martial Davoust to make appellant a trustee of the property transferred, and that there was no intention on the part of Martial Davoust to vest any beneficial interest in the property in appellant. This is consistent with the words spoken and with the situation of the parties and the surrounding circumstances at the time the trust was created.    ■■    It is elementary that an oral trust in personal property is valid (*Noble* v. *Learned*, 153 Cal. 245 [94 P. 1047]), although proof

608

of such a trust must be by clear and convincing evidence. (*Gonzalez* v. *Riis*, 171 Cal.App.2d 473, 476 [340 P.2d 1015].)

The intention of the trustor to create a trust may be derived from his acts, his conduct, and all of the surrounding circumstances, as well as the words spoken. (*People* v. *Pierce*, 110 Cal.App.2d 598, 605 [243 P.2d 585].) Whether such evidence, in a given case, is clear and convincing is primarily a question for the trial court, and if substantial evidence supports the trial court's conclusion, its determination is not open to review on appeal. (*Viner* v. *Untrecht*, 26 Cal.2d 261, 267 [158 P.2d 3]; *Monell* v. *College of Physicians & Surgeons*, 198 Cal.App.2d 38, 48 [17 Cal.Rptr. 744]).

Since the trial court determined that appellant received the property of Martial Davoust in trust, it must necessarily follow that she had legal title to it, but the question remains whether the trial court's judgment quieting title in respondents can be supported. It is settled law that an action to quiet title cannot be maintained by the owner of an equitable title against the owner of the legal title. (*Robinson* v. *Muir*, 151 Cal. 118, 123-124 [90 P. 521]; *Strong* v. *Strong*, 22 Cal.2d 540, 546 [140 P.2d 386]; *Becker* v. *Highboy Coaster Trust*, 112 Cal.App. 219, 223 [296 P. 651].)

Here, although appellant's action to quiet title was filed before the death of Artie Davoust, the latter died before trial, and her interest in the trust property had terminated. Thus, the purpose for which Martial Davoust transferred the property to appellant had been accomplished. The reason for the trust no longer existed and upon completion of the trust purpose the trust terminated. (Civ. Code, § 2279; *Ball* v. *Mann*, 88 Cal.App.2d 695, 699 [199 P.2d 706]; *Estate of Harrington*, 154 Cal.App.2d 470, 474 [316 P.2d 432].)

Where the object of the trust has been fully accomplished, the title of the trustee ceases, and the legal as well as the equitable title vests in the beneficial owner unless it clearly appears that the trustor intended the legal title to continue in the trustee. (*Ball* v. *Mann, supra.*) Here the court did not find any intention on the part of the trustor to vest legal title in appellant upon the death of Artie Davoust, nor would the record before us support such a finding. Legal title to the trust property having departed the appellant, it follows that the judgment of the trial court quieting respondents' title to the trust property must be affirmed.

Judgment affirmed.

Draper, P. J., and Devine, J., concurred.

A petition for a rehearing was denied May 24, 1963, and appellant's petition for a hearing by the Supreme Court was denied June 26, 1963.