Filed 11/15/13  McDonnell v.  Jarvis CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JOHN MCDONNELL, JR., as TRUSTEE, etc.,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TODD JARVIS,<br><br>    Defendant and Appellant. | H036490<br><br>(Monterey County<br>Super. Ct. No. P31598)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br><br>[**NO CHANGE IN JUDGMENT**] |

BY THE COURT:

It is ordered that the opinion filed herein on October 23, 2013, be modified in the following particulars:

1.  In the paragraph commencing at the bottom of page 16 with "James does not" and ending at line 7 of page 17 with " 'a grave injustice,' " the name "James" is replaced with "McDonnell," so that the paragraph reads as follows:

McDonnell does not agree that the appeal is moot.  He points out that the trial court's order granting the petition was automatically stayed pending appeal pursuant to section 1310 and that he, as trustee, entered into a January 2011 letter agreement with Hancock acknowledging that the contract "remains in full force and effect during the

appellate stay." McDonnell explains that the performance deadlines in the contract, including the deadline for close of escrow, run from the date that court approval of the Hancock contract is final, not the date of entry of the court order approving it. Further, McDonnell urges that "[i]f Todd could thwart the completion of the Contract . . . by forcing its expiration simply by filing an appeal of the approval, it would make the entire Petition process required by the Trust meaningless and work a grave injustice."

2. On page 19, in the third paragraph, the name "James" is replaced with "McDonnell," so the paragraph reads as follows:

According to McDonnell, it is undisputed that the settlors' intent when the Trust was created was to sell the Jarvis Ranch for a value greater than agricultural land value, and the circumstances " 'at this time' " included negotiation with Centex/Shea to buy the Jarvis Ranch for development. However, McDonnell argues that the Trust instrument includes language demonstrating the settlors' contemplation of the possibility that the land could not be sold for development; in particular, the language stating that the Trust's purposes included evaluation of the " 'economic viability of the sale and development' " of the Jarvis Ranch and giving the trustee the authority to sell the Trust property.

3. On page 22, in the second full paragraph, the name "James" is replaced with "McDonnell," so the paragraph reads as follows:

McDonnell responds that the failure to hold an evidentiary hearing does not constitute reversible error because Todd did not request an evidentiary hearing on material factual issues and both parties submitted evidence by declarations with attached documents. We agree.

4. In the paragraph commencing at the bottom of page 24 with "James argues" and ending on line 4 of page 25 with "environmental issues," the name "James" is replaced with "McDonnell," so that the paragraph reads as follows:

McDonnell argues to the contrary that the trial court appropriately determined that sale of the Jarvis Ranch to Hancock was in the best interest of the Trust and its

2

beneficiaries; it is undisputed that the sale price of $11.6 million is fair market value; there was no evidence that the Jarvis Ranch could be sold for development in the foreseeable future; the Hancock contract includes a process for opening the sale to overbids; an Internal Revenue Code section 1031 exchange will be accommodated as required by the Trust; and the Hancock contract expressly provides for disclosure of the pending eminent domain actions and environmental disclosures and does not provide a warranty relating to environmental issues.

There is no change in the judgment.

Appellant's petition for rehearing is denied.

_____
BAMATTRE-MANOUKIAN, J.

_____
ELIA, ACTING P.J.

_____
MÁRQUEZ, J.

3

Filed 10/23/13  McDonnell v. Jarvis CA6  (unmodifed version)
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JOHN MCDONNELL, JR., as TRUSTEE, etc., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> TODD JARVIS, <br><br> Defendant and Appellant. | H036490 <br><br> (Monterey County <br> Super. Ct. No. P31598) |

## I.  INTRODUCTION

The Jarvis Ranch, which includes more than 300 acres of agricultural land in Monterey County, is an asset of the Jarvis Replacement Administrative Trust (the Trust). Appellant Todd Jarvis and his brother James Jarvis[1] are co-settlors and beneficiaries of the Trust.  Respondent John McDonnell, Jr. is the court-appointed trustee.

In his capacity as trustee, McDonnell filed a petition for authority to perform a real estate purchase contract for sale of the Jarvis Ranch to Hancock National Resources Group, Inc. (Hancock) for $11.6 million.  The terms of the Trust required McDonnell to petition the court since Todd had objected to the proposed sale while James had

---

[1] For ease of reference and meaning no disrespect, we will refer to Todd Jarvis and James Jarvis by their first names.

consented.  The trial court granted the petition on December 4, 2010.  For the reasons stated below, we conclude that the court did not abuse its discretion and we will affirm the order.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  *The Petition*

In August 2010 McDonnell filed a verified petition for authority to perform a real estate purchase contract pursuant to Probate Code section 17200.[2]  The petition stated that "[t]he Trust was created as part of a court-supervised settlement of a protracted dispute between brothers [Todd] and [James] concerning the Jarvis Family Trusts, created under an agreement between Todd and [James] dated December 18, 1998."  In 2004, Todd and James executed a first amendment to the Trust  and McDonnell was confirmed as trustee by court order.

As stated in the petition, the Trust provides that "[t]he primary purposes of the settlors in the creation of this trust (in no particular order) are to provide (1) for the management and administration of the JARVIS RANCH . . . and the JARVIS PROPERTIES real estate . . . ; (2) the distribution of income from the trust assets . . . .; (3) an evaluation of the economic viability of the sale and development of the JARVIS RANCH and JARVIS PROPERTIES real estate; and (4) the negotiation [of] the sale and the development of the JARVIS RANCH and JARVIS PROPERTIES real estate."

The Trust further provides that "[t]he trustee and settlors agree that, at this time, the settlors are only interested in selling the JARVIS RANCH for a value substantially greater than that which would be paid for just farmland, meaning that the sale should be for the property entitled for a use greater than farmland (such as mixed use, residential use, or commercial use)."

---

[2]  All statutory references hereafter are to the Probate Code unless otherwise stated.

2

The petition specified that the subject of the proposed real estate purchase contract was the Jarvis Ranch, which consists of 333.5 acres currently zoned and used for agriculture. In his capacity as trustee, McDonnell "began to pursue the possibility of accomplishing the stated goal" of entitling the Jarvis Ranch for a purpose other than farmland. Before McDonnell's appointment, Todd was the trustee and an attorney retained by Todd had negotiated an agreement with Centex Homes, Shea Homes and Shea Properties (Centex/Shea) for the possible acquisition and development of the Jarvis Ranch. After McDonnell was appointed, he pursued the creation of an alternative highway route known as the " 'West Side Bypass' " to improve freeway access to the Jarvis Ranch.

However, as stated in the petition, it became "clear that the West Side Bypass will not be constructed in the foreseeable future for a complicated combination of political and economic reasons." Also, Centex/Shea exercised its right to withdraw from the agreement to acquire and develop the Jarvis Ranch. McDonnell consulted John Piini, a real estate broker and appraiser with knowledge of property values and property development in Monterey County. McDonnell also consulted Jeffrey Gilles, an attorney with experience in Monterey County land use and property development. The petition stated that McDonnell "has been informed by Mr. Piini and Mr. Gilles, and believes, that it is highly unlikely that the Jarvis Ranch can be entitled for mixed use within the foreseeable future, not only within the remaining less than four-year term of the Trust, but possibly for many years beyond that time."

In 2009, McDonnell received an unsolicited proposal from Hancock for purchase of the Jarvis Ranch for $11 million, based on the property's value as farmland. McDonnell notified Todd and James that he believed that it was in the best interests of the Trust to negotiate a sale to Hancock since development of the Jarvis Ranch would be impossible in the foreseeable future. After investigating Hancock and determining it was a well-known and respected company specializing in the acquisition of agricultural

3

property, McDonnell negotiated a sales price of $11.6 million. He also negotiated contract terms regarding the need for court approval of the contract if a beneficiary objected to the sale and also a hearing at which overbids would be solicited, as well as a provision permitting termination of the contract if James or Todd agreed to purchase the other's interest in the Jarvis Ranch prior to final approval of the contract.

In August 2010 McDonnell sent James and Todd a notice of proposed action that "informed them that he intended to perform the terms of the executed real estate purchase contract with Hancock ('the Hancock contract')." James signed a consent to the proposed action, while Todd signed an objection. McDonnell stated in the petition that he believed that Todd's objection was unreasonable. Although the statement of intent in the Trust provided that Todd and James were " 'at this time' " only interested in selling the Jarvis Ranch for a value substantially greater than would be paid for farmland, that intent was "based upon an economic climate in which development was booming and real estate values were steadily climbing."

McDonnell further explained in the petition that "the Trust was created and [McDonnell] appointed as trustee because of a bitter and longstanding dispute between Trust beneficiaries Todd and [James]. . . . In addition, although [McDonnell's] relationship with Todd was cordial at the time the Trust was established, and, in fact, it was Todd who nominated [McDonnell] to serve as independent trustee of the Trust, for the past several years Todd has become increasingly hostile towards [McDonnell]. This hostility has significantly interfered with [McDonnell's] administration of the Trust and has dramatically increased the cost of the Trust administration."

In conclusion, McDonnell stated that he "is in complete agreement [with James] that the Hancock contract is a fair and reasonable contract which will allow the Jarvis Ranch to be sold and the net proceeds distributed so that these brothers can sever the business relationship which has been so extraordinarily costly to them both for many years. If the Jarvis Ranch is not sold pursuant to the Hancock contract, [McDonnell]

4

fears that the remaining four years term of the Trust will be similar to the last few years, in which an inordinate amount of Trust assets are spent dealing with Todd's efforts to impede administration of the Trust." McDonnell also stated that "Todd's opposition to this proposed action is unreasonable and that granting [McDonnell] the authority to perform the Hancock contract is not only in the best interests of Todd and [James] but offers the only possible solution to a deeply troubling and intractable situation."

**B.** *Declarations Filed in Support of the Petition*

In support of the petition, McDonnell submitted the declarations of himself, Piini, and James.

**Declaration of James**

In his declaration, James stated, among other things, that when he "entered into negotiations with Todd Jarvis in 2004 to create a new trust agreement, [he] was assured by Todd and his attorneys that the Centex 'deal' was legitimate and that Centex was in the process of presenting a serious offer. [He] agreed to this second trust under the belief that the Jarvis Ranch and Jarvis Properties would be sold, one of the four specific purposes of the trust. Only after the Agreement was signed did [he] discover that Centex considered development of the property unfeasible. . . . [¶] . . . The 2004 Trust memorializes [his] thinking where it states that 'at this time' [he] hoped for the Jarvis Ranch to be sold for more than agricultural value as [he] had been led to believe by Todd. However, [he] also recognized that such a sale might not be possible if circumstances changed. . . . 'AT THAT TIME' we did hope to sell to a developer for greater than farmland value, based solely on Todd's representations. However, the reason that phrase is in there is in recognition that 'times can change,' which they have. If we never intended to sell to anyone but a developer, we would have said so and the phrase 'at this time' would not have been included."

James also stated: "We have before us an all cash offer from a legitimate buyer for $11.6 million which, [he] understand[s], is at or above fair market value. There is no

5

assurance that other or better offers will be forthcoming.  In fact, a number of similar properties near the Jarvis Ranch which have been for sale for a number of years have received no offers."  Referring to "Todd's enmity towards [him]," James concluded that "[t]he equitable solution to this problem is to permit the sale of the Jarvis Ranch to Hancock, sell Jarvis Properties through a managed court-ordered process, terminate the trust, and allow us to go our own ways."

### Declaration of Piini

Piini stated in his declaration that he is a licensed real estate broker and has been a professional real estate appraiser for 35 years, with a specialty in agricultural property. He was familiar with the Jarvis Ranch and had prepared a 1997 appraisal of the property in another matter.  He determined that "the acreage useable for agricultural purposes is 328.5 acres.  In evaluating a purchase offer for agricultural property, the proposed purchase price is divided by the useable acreage in order to obtain a per-acre value." Piini also stated that he was very familiar with land use issues in Monterey County and "the history of efforts to obtain entitlements for other than agricultural use for properties such as the Jarvis Ranch on the west side of the City of Salinas."  He did not "believe that the Jarvis Ranch property has a potential for development as other than agricultural land in the foreseeable future."

Piini was asked to evaluate Hancock's offer to purchase the Jarvis Ranch for $11 million.  He advised McDonnell that the price was " 'a little low,' " and McDonnell might be able to negotiate an increase.  In Piini's opinion, the negotiated purchase price of $11.6 million, based on a rent estimate of approximately $1,800 per acre, "represents a return to the buyer of 5.1% on the sales price of $11,600,000. . . . [T]his is consistent with current rates reflected in sales of similar agricultural property in the Salinas area, which are generally between 5.0% and 5.5% and most recently between 5.0% and 5.25%."

Finally, Piini stated that when he was deposed he "was candid with respect to [his] belief that ordinarily it is good practice to market property for a period of time in order to

6

expose it to a range of potential buyers.  However, . . . when a good offer is received from a reputable buyer, [he] believe[s] that such an offer should be taken seriously.  In [his] opinion, Hancock is a reputable [buyer] and the current offer should be taken seriously."

**Declaration of McDonnell**

McDonnell stated in his declaration, among other things, that he understood at the time the Trust was created that Todd and James hoped to increase the value of the Jarvis Ranch by obtaining entitlements to develop the property for a use other than agricultural use.  However, "the collapse of the real estate market and the dramatically changed political climate in Salinas over the past six years have made it clear that this hope cannot be realized in the the foreseeable future."  When he negotiated the $11.6 million sale to Hancock, McDonnell insisted that the sale be subject to "confirmation and possible overbid in accordance with a sale of real property conducted in an estate under the California Probate Code."  McDonnell had also entered into a letter agreement with Hancock that amended the proposed real estate purchase agreement "to provide that the buyer will cooperate with a [Internal Revenue Code section] 1031 exchange and to extend close of escrow to sixty (60) days after the environmental contingencies have been removed or waived."  If the petition was granted, McDonnell intended to immediately begin marketing the Jarvis Ranch to other prospective bidders with the assistance of real estate brokers and agents.

McDonnell also stated that he has "worked hard as a trustee of the Jarvis Trust for six years, under difficult conditions.  [He] believe[s] that it is in the best interests of the two beneficiaries that this sale be approved; the price is a fair one, and the level of animosity between the two beneficiaries has risen to the point that [he] fear[s] that the administrative costs will continue to climb in this Trust, driven by the continuing dispute between these two brothers.  [His] interactions with each them lead [him] to believe that they are unable to co-own property if they must deal directly with each other."

7

McDonnell denied Todd's allegations that terms of the Hancock contract were " 'hidden' " from Todd and that he had engaged in " 'secret' discussions" with James. McDonnell also denied Todd's allegations that he favored James in his administration of the Trust and that his law firm was responsible for changing the structure of the Trust in a way that interfered with Todd's ability to complete an Internal Revenue Code section 1031 exchange. McDonnell stated that the primary drafting attorney for the Trust was Todd's attorney and that the Trust was negotiated between Todd, James, and their respective counsel before the final version was agreed upon.

### C. *Todd's Opposition to Petition*

Todd filed a memorandum of points and authorities in opposition to the petition. He argued that the proposed sale of the Jarvis Ranch to Hancock was contrary to the express intent of the Trust settlors that the Jarvis Ranch be sold for a value substantially greater than its farmland value. Additionally, Todd argued that James had "secretly solicited" the Hancock offer and failed to disclose "defects involving the drainage and CalTrans issues"; the sale was a "[d]esperation" sale that was not in the best interest of the Trust; based on Piini's deposition testimony, the sale should be delayed until the market for agricultural land strengthened and the property was put on the open market; the drainage and CalTrans issues should be resolved before selling the property; the proposed sale would require modification of the Trust to permit a sale for farmland value; the proposed sale will result in a $1 million tax liability to Todd because the Trust is not structured to accommodate an Internal Revenue Code section 1031 exchange; and the trustee had not been impartial but had favored James's interests and ignored "Todd's legitimate desire to maintain the favorable income stream from Jarvis Ranch."

Todd also filed evidentiary objections in opposition to the petition. His objections to nine sentences and paragraphs in the petition included lack of foundation, hearsay, and speculation. Todd also requested an evidentiary hearing "if the Court is going to consider any of these allegations [in the petition] respecting [Todd's] objections to unspecified

trustee activities, [Todd's] objection to the Trustee's purported settlement of litigation with CalTrans and alleged but unspecified costs to the Trust." Todd also requested an evidentiary hearing "if the Court is inclined to consider any of those allegations [about Trust expenses] as 'evidence.' "

**D.** *Declarations Filed in Support of Todd's Opposition*

In support of his opposition, Todd submitted his own declaration and the declarations of his attorneys with deposition excerpts attached.

**Declaration of Todd**

In his declaration, Todd stated that the Jarvis Ranch "remains a lucrative business" due to farm rents paid by tenants and he did not want to sell the property to "Hancock for their price." Todd asserted that when the Trust was formed in 2004, he had no intention of selling the Jarvis Ranch if a developer did not purchase the property. The proposed sale to Hancock violates the intent of the settlors, according to Todd, because the Trust's language reflects an intent to sell the Jarvis Ranch only for development and to provide income to the beneficiaries.

Todd also asserted that a provision in an earlier draft of the Hancock contract included the trial court's modification of the Trust to permit the sale of the Jarvis Ranch for farmland and that provision was "secretly removed" from the signed version of the Hancock contract without his knowledge. He urged the trial court to reject the Hancock contract on the grounds that the contract "*is very bad* and *unfair to the beneficiaries*." Finally, Todd stated that he would lose the ability to "defer approximately $1,000,000 in tax liability if the sale is consummated" due to McDonnell's "gross negligence" in "disrupting a tax structure set up by the trust attorneys who created the 1998 Trust."

In his supplemental declaration, Todd stated that his objections to the proposed actions of McDonnell as trustee were based on advice from his attorneys and were not due to "a sense of animus towards my brother [James] or anyone else . . . ." Todd also recounted his disputes with James regarding their parents' estate and the Trust, denied

9

that he had guaranteed the Centex/Shea developer opportunity "would bear fruit," and denied that he had ever been removed as trustee or committed any misconduct when he was the trustee.

**Declarations of Todd's Attorneys**

Attorney Vernon H. Granneman submitted a declaration in which he stated that he represented Todd in connection with the petition. According to Granneman, the proposed sale to Hancock would "take away the Trust's primary income producing asset." Granneman also stated that if the Jarvis Ranch is not sold before the Trust terminates in 2014 and the result is a partition action, "it is not a negative." He attached excerpts from the depositions of James, McDonnell, and Piini.

Attorney Timothy P. Burns stated that he is a tax attorney and had "analyzed the question whether or not the current trust agreement for the [Trust] is structured to accommodate a[n] [Internal Revenue Code] Section 1031 exchange." His conclusion was "that the trust is not structured to accommodate a Section 1031 exchange of Todd's 50% interest in the Trust property." If the sale price for the Jarvis Ranch is $11 million, Burns estimated that Todd would incur tax liability of $850,000 "in comparison to what he could instead obtain in a tax efficient exchange."

Attorney Scott A. Sommer stated that he also represents Todd and had reviewed the transcripts of the depositions of Piini, Jeffrey Gilles, and McDonnell. In Sommer's opinion, the sale of the Jarvis Ranch should be delayed "until at least 2011" to maximize the value of the property by resolving issues arising from the Caltrans project and related drainage problems and to allow a marketing plan to be developed.

**E.** *Order After Hearing*

The hearing on the petition was set for November 5, 2010. When the hearing began, the trial court noted that the parties had filed additional documents during the two days immediately preceding the hearing and that Todd had filed documents on the morning of the hearing. The court continued the hearing to November 8, 2010, to allow

10

the court to review the recently filed documents. Todd did not request an evidentiary hearing on November 5. During argument on November 8, Todd's attorney stated that "the only proper way to resolve this is through an evidentiary hearing" because it was not "appropriate for a matter of this magnitude to be decided on declarations and argument of this type." The record does not reflect an express denial by the trial court of Todd's request for an evidentiary hearing or any express rulings on Todd's evidentiary objections.

The trial court filed its order after hearing on December 4, 2010. The court stated that the issues raised by Todd in opposition to the petition included (1) "he had not been kept apprised of contract negotiations"; (2) "full disclosure had not been made to the proposed purchaser"; (3) "no competent evidence ha[d] been submitted regarding the developmental potential of the property"; (4) "the trust must be modified before the property can be sold for mere farm value"; and (5) "the purchase price is speculative."

The order includes the following findings: (1) McDonnell advised Todd and James of Hancock's offer in December 2009; (2) Copies of the proposed contract and a request for comments were provided to Todd and James in April 2010; (3) No comments were received from Todd, who at all times was represented by counsel; (4) the involvement of the property in eminent domain actions was public record, the buyer had been given the opportunity to discuss the eminent domain issues with the Trust's attorney, and it would not be appropriate to release confidential documents until there is a signed contract; (5) the proposed contract allows for a net reduction of the purchase price if the net farmed and irrigated acreage falls below a specified amount due to the eminent domain actions; and (6) the purchase price of $11.6 million is consistent with the sales of similar agricultural property in the Salinas area, as stated in Piini's declaration.

The trial court also ruled on the issue of whether the terms of the Trust permitted the sale of the Jarvis Ranch for farm value. The court began its interpretation by addressing the Trust's provision that the " 'trustee and settlors agree that, at this time, the

11

settlors are only interested in selling the Jarvis Ranch for a value substantially greater than that which would be paid for just farmland . . . .' " The court determined that "[b]y its own terms, [the Trust] states that 'at this time' (this time being June of 2004), the settlors were only interested in selling the property for more than farm value. At that time, discussions were being conducted with national developers Centex/Shea. Those discussions ended soon after establishment of the [Trust]. More than six (6) years have now passed since the [Trust] was established and more than thirteen (13) years since the original Petition for Modification was filed. It does not appear that any other serious proposals have appeared on the horizon since."

Further, the trial court determined that "[w]hile the settlors were, and presumably still are, interested in selling the trust property for its highest price, built in to the [Trust] is the recognition that development may not be economically feasible. Among the four purposes of the trust was for 'an evaluation of the economic viability of the sale and development of the Jarvis Ranch and Jarvis Properties real estate.' This language would not have been necessary if the settlors' intent was only to sell the properties for development. Further, John W. Piini, an expert initially retained by Todd Jarvis as Trustee of the [Trust], states 'I do not believe that the Jarvis Ranch property has a potential for development as other than agricultural land in the foreseeable future.' "

The trial court therefore determined "that it is in the best interest of the trust to take the proposed action" and granted the petition for authority to perform a real estate purchase contract. Todd filed a timely notice of appeal.[3]

---

[3] The trial court's order is appealable pursuant to section 1304, subdivision (a), which provides, "With respect to a trust, the grant or denial of the following orders is appealable: [¶] Any final order under Chapter 3 (commencing with Section 17200) of Part 5 of Division 9 . . . ." Section 1304 also provides exceptions for nonappealable orders that are not relevant here.

## III. DISCUSSION

### A. *Standard of Review*

McDonnell's petition for authority to perform a real estate purchase contract was filed pursuant to section 17200, which provides in part: "Except as provided in Section 15800, a trustee or beneficiary of a trust may petition the court under this chapter concerning the internal affairs of the trust . . . . [¶] (b) Proceedings concerning the internal affairs of a trust include, but are not limited to, proceedings for any of the following purposes: [¶] . . . [¶] (8) Granting powers to the trustee." (§ 17200, subds. (a), (b)(8).)

"The probate court has wide discretion to make any order and take any action necessary or proper to dispose of matters presented by a petition under section 17200. (§ 17206.) The applicable standard of review is therefore abuse of discretion. We are mindful, however, that '[t]he abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.' [Citation.]" (*Manson v. Shepherd* (2010) 188 Cal.App.4th 1244, 1258-1259 (*Manson*).)

### B. *Issues Cognizable On Appeal*

At the outset, we must determine which of the many issues that Todd attempts to raise may be considered on appeal. "As a general rule, 'issues not raised in the trial court cannot be raised for the first time on appeal.' [Citations.]" (*Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 417.) Thus, an argument raised for the first time on appeal is usually forfeited. (*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2006) 136 Cal.App.4th 212, 226 (*Kaufman & Broad*).) We will apply this rule to the issues Todd seeks to raise in his opening brief and his supplemental opening brief.

13

In his opening brief, we understand Todd to attempt to raise the following issues: (1) the trial court's failure to allow an evidentiary hearing as required by section 1022 constitutes prejudicial error; (2) the court erred in failing to analyze the Hancock contract "in the context of the California Prudent Investor Act . . . [§ 16047]"; (3) the court erroneously interpreted the language of the Trust to allow sale of the Jarvis Ranch for agricultural land value because the settlors only intended to sell the property for development; (4) there was evidence that McDonnell's original opinion was that the Trust had to be modified to allow a sale for agricultural land value; and (5) the court acted in excess of its jurisdiction in effectively changing the terms of the Trust absent compliance with Probate Code procedures, and a remand for consideration of whether changed circumstances warrant a modification of the Trust is not the appropriate remedy.

We understand Todd to make the following additional arguments in his supplemental opening brief: (1) the appeal is moot because the Hancock contract expired in March 2011 and the trustee has no authority to extend it; (2) the Hancock contract is not enforceable because it is "a disguised option contract"; (3) the Hancock contract is unenforceable under Civil Code section 1611 because the amount of the consideration is left to Hancock to determine; (4) the trustee is collaterally estopped from asserting that there will be no development of the Jarvis Ranch in the foreseeable future because he sought funds for payment of a land use planner in the related eminent domain action; and (5) contrary to the trustee's assertions, there is no evidence that the Jarvis Ranch could not be partitioned between Todd and James.

Our review of the record shows that Todd did not raise several of the above issues in the trial court, including whether the court erred in failing to analyze the Hancock contract "in the context of the California Prudent Investor Act . . . [§ 16047]"; whether the court acted in excess of its jurisdiction in effectively changing the terms of the Trust absent required Probate Code procedures; whether the appeal is moot because the Hancock contract expired in March 2011 and the trustee has no authority to extend it;

14

whether the Hancock contract is unenforceable because it is "a disguised option contract"; whether the Hancock contract is unenforceable under Civil Code section 1611; whether the trustee should be collaterally estopped from asserting that there will be no development of the Jarvis Ranch in the foreseeable future because he sought funds for payment of a land use planner in the eminent domain action; and there is no evidence that the Jarvis Ranch could not be partitioned between Todd and James. Since all of these issues are raised for the first time on appeal, with the exception of the mootness issue that we will discuss below, we will not consider them. (*Kaufman & Broad*, *supra*, 136 Cal.App.4th at p. 226.)[4]

In his reply brief, Todd adds two new arguments that we understand as follows: (1) the trial court failed to consider whether the Hancock contract would result in a capital loss to the beneficiaries, in conflict with unspecified Trust provisions that aid deferral of large capital gains; and (2) the trial court failed to consider the adverse tax consequences of the Hancock contract. However, "[p]oints raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before." (*Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3 (*Campos*).) "The California Supreme Court long ago expressed its hostility to the practice of raising new issues in an appellate reply brief." (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th

---

[4] Additionally, we observe that Todd's argument in support of the collateral estoppel issue depends upon documents that were not before the trial court at the time of the November 2010 hearing on the petition. Todd has requested judicial notice of a number of documents apparently filed in the trial court after the December 4, 2010, order granting the petition. We will deny Todd's request for judicial notice because "[i]t has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.' [Citation.]" (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.) Accordingly, we will disregard Todd's collateral estoppel argument because it is based upon the documents for which he requested judicial notice.

754, 764.)  " 'Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant.'  [Citation.]"  (*Ibid*.)

We determine that Todd has forfeited the capital loss issue because he has raised it for the first time on appeal in his reply brief.  (*Kaufman & Broad*, *supra*, 136 Cal.App.4th at p. 226; see *Campos*, *supra*, 57 Cal.App.4th at p. 794, fn. 3.)  Although Todd makes the adverse tax consequences argument for the first time in his reply brief, to the extent he raised the tax issue below and makes that argument in connection with the issue of whether the trial court abused its discretion in granting the petition, we will consider it.

For these reasons, we determine that the following issues are cognizable in this appeal:  (1) whether the appeal is moot; (2) whether the Trust may be interpreted to allow the sale of the Jarvis Ranch for agricultural land value; (3) whether the trial court erred in failing to allow an evidentiary hearing; and (4) whether the trial court abused its discretion in granting the petition for authority to perform a real estate purchase contract for sale of the Jarvis Ranch to Hancock.

### C. *Mootness*

We will begin our evaluation with consideration of Todd's claim that the appeal is moot.  We understand Todd to argue, in his supplemental opening brief filed in September 2012, that the appeal is moot because the Hancock contract terminated by its own terms on March 9, 2011, which was the deadline for close of escrow, and McDonnell did not seek court approval of a contract extension.  Todd has not requested dismissal of the appeal.[5]

James does not agree that the appeal is moot.  He points out that the trial court's order granting the petition was automatically stayed pending appeal pursuant to section 1310 and that McDonnell, as trustee, entered into a January 2011 letter agreement with

---

[5]  This court denied Todd's May 2012 request for permission to file a "motion to reverse and directions to probate court to dismiss" on September 6, 2012.

Hancock acknowledging that the contract "remains in full force and effect during the appellate stay." James explains that the performance deadlines in the contract, including the deadline for close of escrow, run from the date that court approval of the Hancock contract is final, not the date of entry of the court order approving it. Further, James urges that "[i]f Todd could thwart the completion of the Contract . . . by forcing its expiration simply by filing an appeal of the approval, it would make the entire Petition process required by the Trust meaningless and work a grave injustice."

We determine that the appeal is not moot. Section 1310, subdivision (a), provides that with certain exceptions not relevant here, "an appeal pursuant to Chapter 1 (commencing with Section 1300) stays the operation and effect of the judgment or order." As we have previously noted, the December 4, 2010 order granting the petition and giving McDonnell authority to sell the Jarvis Ranch to Hancock is appealable pursuant to section 1304, subdivision (a). Under section 1310, subdivision (a), therefore, the trial court's December 4, 2010 order is stayed pending appeal in both its operation and its effect. Accordingly, the performance deadlines in the Hancock contract, including the deadline for close of escrow that is argued by Todd as a basis of his mootness argument, have not expired since the trigger for those deadlines—court approval of the contract—is not yet effective.[6]

Having determined that the appeal is not moot, we will next consider the threshold issue of whether the Trust may be properly interpreted to allow the sale of the Jarvis Ranch for agricultural land value, beginning with an overview of the rules governing the interpretation of trust instruments.

---

[6] Paragraph 2 of the real estate purchase contract attached to the petition states: "No later than ten (10) business days following the date the performance of this Contract is approved by the court . . . Buyer shall open escrow . . . ."

17

**D.** *Interpretation of Trust Instrument*

"In construing trust instruments, as in the construction and interpretation of all documents, the duty of the court is to first ascertain and then, if possible, give effect to the intent of the maker." (*Estate of Gump* (1940) 16 Cal.2d 535, 548; accord, *Ephraim v. Metropolitan Trust Co.* (1946) 28 Cal.2d 824, 834 ["the primary rule in construction of trusts is that the court must, if possible, ascertain and effectuate the intention of the trustor or settlor"]; § 21102, subd. (a) [trustor's intent controls].)

"It is axiomatic that we must look to the instrument creating the trust to determine the nature, extent and object of said trust." (*Moxley v. Title Ins. & Trust Co.* (1946) 27 Cal.2d 457, 463.) "Accordingly, in ascertaining the intention of the trustor the court is not limited to determining what is meant by any particular phrase but may also consider the necessary implication arising from the language of the instrument as a whole." (*Brock v. Hall* (1949) 33 Cal.2d 885, 890 (*Brock*); see §§ 21120, 21121.)

The court also examines the relevant circumstances surrounding creation of the trust. (*Estate of Powell* (2000) 83 Cal.App.4th 1434, 1440.) " ' "In interpreting a document such as a trust, it is proper for the trial court in the first instance and the appellate court on de novo review to consider the circumstances under which the document was made so that the court may be placed in the position of the testator or trustor whose language it is interpreting, in order to determine whether the terms of the document are clear and definite, or ambiguous in some respect." ' [Citations.]" (*Estate of Powell* (2000) 83 Cal.App.4th 1434, 1440.) " 'Thus, extrinsic evidence as to the circumstances under which a written instrument was made is admissible to interpret the instrument, although not to give it a meaning to which it is not reasonably susceptible.' " (*Ike v. Doolittle* (1998) 61 Cal.App.4th 51,73; see *Burch v. George* (1994) 7 Cal.4th 246, 258, fn. 8 ["Evidence of the circumstances surrounding the execution of the trust instrument is properly admissible to ascertain its meaning and intent. [Citations.]"].)

In reviewing a trial court's construction of a trust, " 'we are free to independently interpret the instrument as a matter of law *unless* the trial court's interpretation turned upon the credibility of extrinsic evidence or required resolution of a conflict in the evidence. [Citations.] "The possibility that conflicting inferences can be drawn from uncontroverted evidence does not relieve the appellate court of its duty independently to interpret the instrument; it is only when the issue turns upon the credibility of extrinsic evidence, or requires resolution of a conflict in that evidence, that the trial court['s] determination is binding." [Citation.]' [Citation.]" (*Estate of Goyette* (2004) 123 Cal.App.4th 67, 71.)

On appeal, Todd acknowledges that the Trust instrument does not expressly prohibit the sale of the Jarvis Ranch for agricultural land value. He argues, however, that the trial court erred in determining that the Trust permits the sale of the Jarvis Ranch for agricultural land value because the language of the Trust instrument, specifically the phrases " 'at this time' " and " 'sale and development,' " shows that the settlors only wanted to sell Jarvis Ranch if it could be developed. Todd also asserts that McDonnell stated in an email earlier in the case that James was no longer interested in amending the Trust to allow a sale for agricultural land value.

According to James, it is undisputed that the settlors' intent when the Trust was created was to sell the Jarvis Ranch for a value greater than agricultural land value, and the circumstances " 'at this time' " included negotiation with Centex/Shea to buy the Jarvis Ranch for development. However, James argues that the Trust instrument includes language demonstrating the settlors' contemplation of the possibility that the land could not be sold for development; in particular, the language stating that the Trust's purposes included evaluation of the " 'economic viability of the sale and development' " of the Jarvis Ranch and giving the trustee the authority to sell the Trust property.

Having reviewed the language of the Trust instrument and the evidence of the circumstances surrounding its making, we agree with the trial court that the Trust permits

19

the trustee to sell the Jarvis Ranch for agricultural land value. In our analysis, we look first to the language of the Trust as a whole, as required by the standard of review. (*Brock*, *supra*, 33 Cal.2d at p. 890.)

The Trust instrument includes the following statement of intent, at paragraph 1.3: "The primary purposes of the settlors in the creation of this trust (in no particular order) are to provide (1) for the management and administration of the JARVIS RANCH . . . and the JARVIS PROPERTIES real estate . . .; (2) the distribution of income from the trust assets as provided in section 5.1; (3) *an evaluation of the economic viability of the sale and development of the JARVIS RANCH and JARVIS PROPERTIES real estate*; and (4) the negotiation of the sale and the development of the JARVIS RANCH and the JARVIS PROPERTIES real estate." (Italics added.)

The statement of intent also provides that "[t]he trustee and settlors agree that, *at this time,* the settlors are only interested in selling the JARVIS RANCH for a value substantially greater than that which would be paid for just farmland, meaning that the sale should be for the property entitled for a use greater than farmland (such as a mixed use, residential or commercial use)." (Italics added.)

At paragraph 7.8, the Trust states the general powers of the trustee, which include in part: "[T]he trustee shall have all of the following powers, in his fiduciary capacity . . . [¶] . . . With or without court authorization, negotiate, sell (for cash or on deferred payments and with security), convey, exchange, partition, and divide trust property . . . ."

The Trust also specifies special powers and duties of the trustee relating to the proposed sale of the Jarvis Ranch, including (1) "The trustee shall reasonably cooperate with any requests from the beneficiaries . . . that the sale of the JARVIS RANCH real estate . . . be structured to accommodate an Internal Revenue Code Section 1031 exchange in order to defer income taxes on the proceeds of the sale"; and (2) "The trustee may, but is not required to, execute an exclusive negotiation agreement ('ENA') by and

20

between the trust and a developer or developers. Attached as Exhibit B is a copy of an ENA with [Centex/Shea] which was signed by them and dated December 29, 2003, which the trustee shall promptly consider and may amend and sign if the trustee deems it in the interests of the trust to pursue this opportunity."

As Todd acknowledges, the Trust instrument does not expressly provide that the settlors (Todd and James) intended that sale of the Jarvis Ranch be prohibited unless the property could be sold for a value greater than agricultural land value. We find that the plain language of the Trust authorizes the trustee to sell Jarvis Ranch property and does not restrict the use for which the property may be sold. Additionally, the Trust instrument expressly provides that one of the Trust's purposes is to evaluate "the economic viability of the sale and development" of the Jarvis Ranch, which necessarily implies that the settlors contemplated that sale of the Jarvis Ranch for development might not be economically viable. Moreover, as the trial court noted, the phrase "at this time" in the statement of intent ("[t]he trustee and settlors agree that, at this time, the settlors are only interested in selling the JARVIS RANCH for a value substantially greater than that which would be paid for just farmland . . . .") would not have been necessary if the settlors had intended to sell the Jarvis Ranch only for development or did not contemplate a sale for agricultural land value at a later time. We therefore determine that the Trust authorizes the trustee to sell the Jarvis Ranch for agricultural land value.

Our interpretation of the Trust instrument is supported by substantial evidence of the circumstances surrounding the creation of the Trust. (See *Cutrera v. McClallen* (1963) 215 Cal.App.2d 604, 608.) It is undisputed that when the Trust was amended in 2004, negotiations with Centex/Shea to purchase the Jarvis Ranch for development were pending and the sale had not been agreed upon. It is also undisputed that Centex/Shea withdrew from those negotiations shortly after the Trust was established and the trustee thereafter determined on the basis of expert opinion that sale and development of the Jarvis Ranch was not economically viable in the foreseeable future. Accordingly, we

interpret the Trust instrument to authorize McDonnell, as trustee, to sell the Jarvis Ranch for agricultural land value after negotiations to sell the property to Centex/Shea for development failed and development of the property was no longer economically viable.

### E. *Evidentiary Hearing*

Todd contends that the trial court erred in failing to grant his requests for an evidentiary hearing in this contested proceeding, since section 1022 only allows the use of affidavits as evidence in uncontested probate proceedings.

James responds that the failure to hold an evidentiary hearing does not constitute reversible error because Todd did not request an evidentiary hearing on material factual issues and both parties submitted evidence by declarations with attached documents. We agree.

Section 1022 provides that in a proceeding under the Probate Code, "[a]n affidavit or verified petition shall be received as evidence when offered in an uncontested proceeding." [7] Therefore, "when challenged in a lower court, affidavits and verified petitions may not be considered as evidence at a contested probate hearing. [Citation]." (*Evangelho v. Presoto* (1998) 67 Cal.App.4th 615, 620 (*Evangelho*).) Under that general rule, where a party opposing a motion in probate court requested an evidentiary hearing on the ground that there were "factual conflicts presented by the parties' competing declarations," the trial court committed reversible error in denying the request for an evidentiary hearing. (*Estate of Bennett* (2008) 163 Cal.App.4th 1303, 1309-1310 (*Bennett*); see also *Estate of Lensch* (2009) 177 Cal.App.4th 667, 676 (*Lensch*).)

---

[7] "Most statutes refer to affidavits rather than declarations, but [Code of Civil Procedure] section 2015.5 authorizes a declaration to be used whenever the law requires an affidavit." (*Harbour Vista, LLC v. HSBC Mortgage Services, Inc* (2011) 201 Cal.App.4th 1496, 1515, fn. 7.)

22

However, there is an exception that is applicable in the present case. "[W]here the parties do not object to the use of affidavits in evidence, and where both parties adopt that means of supporting their positions, the parties cannot question the propriety of the procedure on appeal. [Citation.]" (*Estate of Nicholas* (1986) 177 Cal.App.3d 1071, 1088; see *Estate of Fraysher* (1956) 47 Cal.2d 131, 135; *Evangelho*, *supra*, 67 Cal.App.4th at p. 620.) Here, both parties submitted declarations as evidence in support of their positions on the petition. Todd made evidentiary objections, such as lack of foundation, to certain portions of James's declarations, but Todd did not object to the use of declarations as evidence.

Moreover, Todd's written request for an evidentiary hearing did not identify any material factual conflicts arising from either McDonnell's verified petition or the parties' declarations that required an evidentiary hearing. (See *Lensch*, *supra*, 177 Cal.App.4th at p. 676; *Bennett*, *supra*, 163 Cal.App.4th at p. 1309.) Todd only requested an evidentiary hearing "if the Court is going to consider any of these allegations [in the petition] respecting [Todd's] objections to unspecified trustee activities, [Todd's] objection to the Trustee's purported settlement of litigation with CalTrans and alleged but unspecified costs to the Trust;" or "if the Court is inclined to consider any of those allegations [about Trust expenses] as 'evidence.' " The record does not reflect that the trial court considered these matters in deciding the petition or that they constituted material factual conflicts with respect to the petition. Moreover, Todd's oral request for an evidentiary hearing on the day of the hearing on the petition was based on the insufficient conclusory assertion that "the only proper way to resolve this is through an evidentiary hearing" because it was not "appropriate for a matter of this magnitude to be decided on declarations and argument of this type."

We therefore determine that the trial court did not err in failing to grant Todd's request for an evidentiary hearing on the petition.

**F.** *Abuse of Discretion*

We next consider the ultimate issue of whether the trial court abused its discretion in granting the petition. As we have stated, the abuse of discretion standard of review is applicable where, as here, the trial court's order concerns a petition filed under section 17200. (§ 17206; see *Manson*, *supra*, 188 Cal.App.4th 1244, 1258.)

" '[O]ne of the essential attributes of abuse of discretion is that it must clearly appear to effect injustice. [Citations.] Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered. The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power.' [Citations.]" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 (*Denham*).) In other words, "[a] trial court will abuse its discretion by action that is arbitrary or 'that transgresses the confines of the applicable principles of law.' [Citations.]" (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 281 (*Shaw*.))

Although neither party framed his arguments regarding the merits of the trial court's order under the abuse of discretion standard, we understand their arguments with respect to the trial court's exercise of its discretion to be as follows.

Todd contends that the trial court erred because the Trust does not permit the sale of the Jarvis Ranch for agricultural land value; the proposed sale to Hancock will cause him to suffer adverse tax consequences; the Hancock contract is unfair and uncertain; and McDonnell secretly changed language in the draft contract.

James argues to the contrary that the trial court appropriately determined that sale of the Jarvis Ranch to Hancock was in the best interest of the Trust and its beneficiaries; it is undisputed that the sale price of $11.6 million is fair market value; there was no evidence that the Jarvis Ranch could be sold for development in the foreseeable future; the Hancock contract includes a process for opening the sale to overbids; an Internal

24

Revenue Code section 1031 exchange will be accommodated as required by the Trust; and the Hancock contract expressly provides for disclosure of the pending eminent domain actions and environmental disclosures and does not provide a warranty relating to environmental issues.

We determine that Todd has failed to meet his burden as the appellant to show a clear case of abuse of discretion resulting in a miscarriage of justice. (See *Denham*, *supra*, 2 Cal.3d at p. 566.) As we have previously determined as a matter of law, the trial court did not err in interpreting the Trust to permit the sale of the Jarvis Ranch for agricultural land value. Further, the trial court properly relied on the undisputed expert opinion of Piini, a real estate broker specializing in agricultural land sales, that the purchase price of $11.6 million was consistent with the sales of similar agricultural properties and that there was no potential for sale of the property for development in the foreseeable future.

As to Todd's claim regarding the adverse tax consequences of the Hancock contract, which the trial court implicitly rejected, we observe that McDonnell stated in his declaration that he had entered into a letter agreement with Hancock that amended the proposed real estate purchase agreement "to provide that the buyer will cooperate with a [Internal Revenue Code section] 1031 exchange." Additionally, the Trust expressly provides that "[t]he trustee shall reasonably cooperate with any requests from the beneficiaries . . . that the sale of the JARVIS RANCH real estate . . . be structured to accommodate an Internal Revenue Code Section 1031 exchange in order to defer income taxes on the proceeds of the sale."

The trial court's finding that the sale of the Jarvis Ranch to Hancock was in the best interests of the Trust was also supported by McDonnell's evidence, as stated in his verified petition and his declaration, that the sale would benefit the Trust by reducing the high conflict between beneficiaries Todd and James and by reducing the administrative costs caused by their conflict. Accordingly, Todd has not shown that the trial court

25

abused its discretion by an action that was arbitrary or transgressed the applicable principles of law. (*Shaw*, *supra*, 170 Cal.App.4th at p. 281.)

For these reasons, we conclude that the trial court did not err in granting the petition for for authority to perform a real estate purchase contract for sale of the Jarvis Ranch to Hancock for $11.6 million and we will affirm the order.

### G. *Sanctions Motions*

Finally, we address the parties' motions for monetary sanctions.

Todd has filed a motion for monetary sanctions against McDonnell's attorneys. We understand Todd to argue in his 44-page motion that McDonnell's attorneys filed a frivolous motion for sanctions against him; filed a frivolous defense of the appeal; submitted false and misleading statements to the court; and committed unreasonable violations of unspecified rules of the California Rules of Court.

McDonnell has filed a motion for monetary sanctions against Todd on the ground that Todd filed a frivolous "motion to reverse with directions to the probate court to dismiss case." McDonnell argues that Todd misled this court by asserting that he did not know the grounds for the motion to reverse (mootness of the appeal) before filing his opening brief, when the record clearly shows otherwise.

Under Code of Civil Procedure section 907 and California Rules of Court, rule 8.276(a)(1), an appellate court may impose sanctions against a party or an attorney for taking a frivolous appeal. In *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, the California Supreme Court set forth the standard for determining whether an appeal is frivolous and deserving of sanctions. The court stated that sanctions "should be used most sparingly to deter only the most egregious conduct." (*Id*. at p. 651.) An appellate court may also impose sanctions where a party or attorney included in the record any matter not reasonably material to the appeal's determination; filed a frivolous motion; or committed any other unreasonable violation of the California Rules of Court. (Cal. Rules of Court, rule 8.276(a)(2)-(4).)

26

In this case we determine that neither party's arguments justify an award of sanctions. McDonnell cannot be faulted for defending Todd's appeal and we are not convinced by Todd's other arguments in support of a sanctions award against McDonnell. We are also not convinced by McDonnell's argument that a sanctions award against Todd is warranted due to his filing of the "motion to reverse with directions to the probate court to dismiss case." The "motion to reverse with directions to the probate court to dismiss case" was not actually filed since this court's September 6, 2012 order denied Todd's request for leave to file that motion. We will therefore deny both sanctions motions.

## IV. DISPOSITION

Appellant Todd Jarvis's motion for sanctions is denied.  Respondent John McDonnell's motion for sanctions is denied.  The December 4, 2010 order granting the petition for authority to perform a real estate purchase contract is affirmed.  Costs on appeal are awarded to respondent.


_____
BAMATTRE-MANOUKIAN, J.



WE CONCUR:



_____
ELIA, ACTING P.J.



_____
MÁRQUEZ, J.