Filed 2/29/24  Colvis v. Binswanger CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| LINDA GARAVENTA COLVIS, <br><br>    Plaintiff and Appellant, <br><br> v. <br><br> LOUISA BINSWANGER, as Trustee, etc., <br><br>    Defendant and Respondent. | A163467 <br><br> (Contra Costa County Super. Ct. No. MSP15-02131) |

Linda Garaventa Colvis (Petitioner) appeals from the trial court's order dismissing her Probate Code[1] section 17200 petition seeking various relief. We affirm in part and reverse in part.

BACKGROUND

Petitioner is one of five adult siblings; the others are Silvio Garaventa, Jr., Marie Louise Adler, Joseph Garaventa, and respondent Louisa Binswanger (Trustee).[2]  When the siblings' surviving parent, Mary

_____

[1] All undesignated section references are to the Probate Code.

[2] For convenience, we will refer to the nonparty family members by their first names.  No disrespect is intended.

1

Garaventa, died in 2015, Trustee became the trustee of the family trust (Trust).

The terms of the Trust provide that, after payment of expenses and specific bequests, the balance of the Trust is to be distributed evenly among five subtrusts for the benefit of the five siblings and their children. The Trust has not yet been distributed to the subtrusts. The Trust's primary asset is 70 percent of the shares of the family business (the Garaventa Entities). The five siblings comprise the Board of Directors of the Garaventa Entities.

In 2015, a probate case was initiated when Trustee filed a petition for instructions. In April 2020, Petitioner and Joseph filed the underlying verified petition (the Petition) seeking certain information from Trustee relating to the Trust, a review of Trustee's compensation, attorney invoices for work performed on behalf of Trustee, and an order precluding Trustee from using Trust assets as interim defense fees. Trustee filed a verified objection seeking denial of the Petition in its entirety. In April 2021, following a hearing, the trial court denied the Petition. Petitioner appealed.

DISCUSSION

"Sections 17202 and 17206 both provide the court with discretion to make orders regarding trusts.[3] [Citation.] The court must exercise its discretion within the ' " 'limitations of legal principles governing the subject of its action.' " ' [Citation.] A court abuses its discretion if ' "it exceeded the bounds of reason or contravened the uncontradicted evidence [citation], failed to follow proper procedure in reaching its decision [citation], or applied the

_____

[3] Section 17202 provides, "The court may dismiss a petition if it appears that the proceeding is not reasonably necessary for the protection of the interests of the trustee or beneficiary." Section 17206 provides, "The court in its discretion may make any orders and take any other action necessary or proper to dispose of the matters presented by the petition . . . ."

2

wrong legal standard to the determination." ' " (*Dunlap v. Mayer* (2021) 63 Cal.App.5th 419, 423–424 (*Dunlap*).)

I.    *Evidentiary Hearing*

Petitioner argues the trial court violated her due process rights and abused its discretion in failing to hold an evidentiary hearing on the Petition, and further erred in relying on Trustee's verified objection as evidence. We find one aspect of this challenge moot, and otherwise reject the claim.

A.    *Additional Background*

The verified Petition did not request an evidentiary hearing. Trustee's verified objection requested the trial court deny the Petition. A hearing on the Petition was held.

At the hearing, neither Petitioner nor Joseph's attorney asked for an evidentiary hearing or challenged the use of Trustee's verified objection as evidence, although Petitioner's counsel argued there were "factual issues here related to the trustee's compensation." *Trustee's* counsel requested an evidentiary hearing, but only "[t]o the extent there is a factual dispute," adding, "we have yet to hear anything from [Petitioner] or Joseph Garaventa that would arise to the need for an evidentiary hearing . . . ." Trustee's counsel was clear that Trustee was seeking denial of the Petition without further proceedings, suggesting the court should "deny [the Petition] on the papers."

At the conclusion of the hearing, the court took the matter under submission and asked the parties to submit proposed orders. Petitioner's proposed order did not challenge the use of Trustee's verified objection as evidence, and set an evidentiary hearing only on the issue of Trustee's fees.

B.    *Analysis*

Petitioner first argues her due process rights were violated because she was denied notice and an opportunity to be heard.  We disagree.  Petitioner was provided ample notice and had the opportunity to fully argue the issues.  Petitioner's authority is clearly distinguishable.  (See *Bricker v. Superior Court* (2005) 133 Cal.App.4th 634, 639 ["[P]etitioner was not notified prior to the readiness conference that respondent [superior court] was considering dismissing her appeals.  At the beginning of the readiness conference, and without even mentioning to the parties at that time that it was considering the question, respondent announced its decision that petitioner had no right to appeal.  Respondent's sua sponte ruling, which effectively dismissed petitioner's appeals from the eleven small claims judgments, plainly violated petitioner's due process rights."]; *Moore v. California Minerals Products Corp.* (1953) 115 Cal.App.2d 834, 837 ["Elementary principles of due process support our conclusion that if, during a trial, the court, sua sponte, unearths a point of law which it deems to be decisive of the cause, the party against whom the decision impends has the same right to be heard before the decision is announced that he has to produce evidence upon the issues of fact.  Denial of that opportunity deprived defendant of a substantial right to which it was entitled by virtue of the guarantee of due process."]; see also *Dunlap, supra,* 63 Cal.App.5th at p. 427 ["There was no notice of dismissal before the conference.  Notice of the hearing stated only that it was set for a '[p]rogress report on pending discovery.'  There was no notice to the [petitioner] that dismissal of the petition would be considered, much less granted."].)

Petitioner next argues the trial court abused its discretion in failing to hold an evidentiary hearing on the Petition.  With the possible exception of the Petition's challenge to Trustee's fees, Petitioner did not seek an

4

evidentiary hearing below. As set forth below in part III, we are reversing and remanding the trial court's order with respect to Trustee's fees, so Petitioner's challenge to the lack of an evidentiary hearing on this issue is moot. As to the remaining issues, Petitioner's assertion that a request for an evidentiary hearing is not necessary where a hearing is contested is not supported by her authority. (See *Estate of Lensch* (2009) 177 Cal.App.4th 667, 677–678 ["when the issues underlying appellants' petition were disputed, appellant properly invoked their fundamental right to an evidentiary hearing on them" when they "request[ed] . . . an evidentiary hearing . . . three times at the very brief hearing on their petition"]; *Estate of Bennett* (2008) 163 Cal.App.4th 1303, 1309 (*Bennett*) ["Smith, while opposing the motion on the merits, also asserted in written opposition and at the hearing that the factual conflicts presented by the parties' competing declarations mandated an evidentiary hearing. Consequently, the issue was preserved for review in this case."]; see also *Conservatorship of Farrant* (2021) 67 Cal.App.5th 370, 378 (*Farrant*) [no abuse of discretion to deny request for evidentiary hearing where, "[i]nstead of specifying the factual issues he intended to litigate and the relevant evidence (testimony and exhibits) he would produce at the hearing, appellant's counsel made vague representations"].) Accordingly, Petitioner's failure to request an evidentiary hearing on all remaining issues forfeits her challenge on appeal with respect to these issues.

Finally, Petitioner contends the trial court erred in relying on Trustee's verified objections as evidence. " '[T]he Probate Code limits the use of affidavits to "uncontested proceeding[s]." ' " (*Farrant, supra,* 67 Cal.App.5th at p. 377.) However, "the restriction on the use of declarations in contested probate hearings is inapplicable when 'the parties d[o] not object to the use of

5

affidavits in evidence and both parties adopt[ ] that means of supporting their positions.' " (*Bennett, supra,* 163 Cal.App.4th at p. 1309.) Petitioner did not object to Trustee's reliance on her verified objections below, and Petitioner further relied on her own verified Petition. She has thus forfeited the challenge. (*Farrant,* at p. 377 ["The probate proceeding here was contested. But appellant did not object to the probate court's consideration of affidavits and declarations. By failing to object, appellant forfeited the issue. The probate court properly considered the affidavits and declarations."]; *Evangelho v. Presoto* (1998) 67 Cal.App.4th 615, 620 [" 'The trustee's petition and [the objector's] written objections were both verified in the form of declarations under the penalty of perjury. [Citation.] Absent an objection, these documents were properly considered as evidence.' "]; see also *Dunlap, supra,* 63 Cal.App.5th at p. 426 [" '*[W]hen challenged in a lower court*, affidavits and verified petitions may not be considered as evidence at a contested probate hearing.' " (Italics added)].)

II.  *Requests For Information*

The Petition sought an order directing Trustee to provide information about Trustee's "plan to meet the Trust's estate tax liabilities" and "plan to make distributions from the Trust to the sub-trusts," as requested by Petitioner in December 2018.[4] Petitioner argues the trial court erred in

---

[4] Section 16061 provides, with exceptions not relevant here, "on reasonable request by a beneficiary, the trustee shall report to the beneficiary by providing requested information to the beneficiary relating to the administration of the trust relevant to the beneficiary's interest." Section 17200, subdivision (b)(7)(B), provides a beneficiary may petition for an order compelling the trustee to "Provide information about the trust under Section 16061 if the trustee has failed to provide the requested information within 60 days after the beneficiary's reasonable written request, and the beneficiary

6

finding this claim precluded by res judicata and in further finding Trustee had provided "a sufficient, reasonable answer to the request[s] for information" about tax obligations and distribution timing in an August 2019 verified court filing.

A.  *Additional Background*

In May 2019, Petitioner and Joseph filed a verified petition (2019 Petition) seeking the appointment of a temporary trustee or limited purpose receiver "to develop a plan to deal with the Trust's financial obligations," specifically, "the approximately $1.78 million the Trust will owe annually to the IRS in estate taxes" and the "more than $2.1 million owed in specific gifts." The 2019 Petition stated the Trust would not be able to meet these obligations and, because the IRS had a lien on the Trust's interest in the Garaventa Entities, missing an estate tax payment would mean "the IRS could then force the liquidation of the Garaventa Entities at fire-sale pricing causing significant harm to the Trust[ and] its beneficiaries . . . ." The Trust's accountant "indicated that the obvious way he saw for the Trust to satisfy its annual estate tax liabilities through 2030 would be to sell the Garaventa Entities," and a sale would also allow Trustee to distribute the remaining Trust estate to the subtrusts. Nonetheless, Trustee refused to consider selling the Trust's interest in the Garaventa Entities. The 2019 Petition claimed Trustee's position was due to "an irreconcilable conflict of interest," namely, the substantial fees she was earning as Trustee and the attorney fees paid to the Trust's law firm, where Trustee's son worked as an attorney.

---

has not received the requested information from the trustee within the six months preceding the request."

In August 2019, Trustee filed a verified objection to the May 2019 petition (2019 Objection) responding to the 2019 Petition and seeking an order denying it in its entirety. Following a hearing, the trial court issued an order denying the 2019 Petition. Joseph and Petitioner did not appeal.

B. *Analysis*

We first consider whether the trial court abused its discretion in finding Trustee's 2019 Objection provided sufficient answers to Petitioner's requests for information. (*Esslinger v. Cummins* (2006) 144 Cal.App.4th 517, 526 ["information or a particular account under section 16061, sought by petition under section 17200, subdivision (b)(7), lies within the probate court's discretion"].) As an initial matter, Petitioner argues the trial court impermissibly relied on the 2019 Objection because Trustee did not request judicial notice of the filing. In her objection to the Petition, Trustee cited to and quoted from the 2019 Objection in arguing she had already provided the requested information. At the hearing on the Petition, Trustee's counsel reiterated, "with respect to their demand for information, we've already provided that to them. We provided it to them under penalty of perjury in our response to [the 2019 Petition]." Petitioner did not object below to Trustee's reliance on the 2019 Objection, and has therefore forfeited this challenge. (Evid. Code, § 353, subd. (a).)

With respect to Petitioner's request for Trustee's estate tax plan, the 2019 Objection stated Trustee was working with "William Molkenbuhr, a CPA . . . regarding the estate tax obligations." The estate tax liability was "approximately $14 million" and Trustee intended to make payments over a statutorily-permitted time period because "[t]he deferred estate tax bears interest at a below-market interest rate." Trustee explained, "The Trustee's goal is to utilize this economically advantageous rate to permit the Garaventa

8

[Entities] to recover from the mismanagement of Joseph and [Petitioner's husband]," who previously held management positions; Trustee "anticipates" this recovery would happen "within three to five years." Trustee further stated that "[t]he Garaventa [Entities] are an option to satisfy this [estate tax] liability, but not the only option," adding, "the Trust owns other real estate that is available to be sold to raise cash." The trial court did not abuse its discretion in finding this constituted sufficient information about Trustee's plan for the estate tax liability.[5]

In contrast to the 2019 Objection's detailed statements regarding Trustee's plan for the estate taxes, the filing included scant information about Trustee's plan for distribution of the Trust. The trial court relied on the statement that Trustee anticipates the Garaventa Entities will recover from prior mismanagement " 'within three to five years,' " but the 2019 Objection did not link this statement to the timing of distributions. Instead, the 2019 Objection responded to the 2019 Petition's statement that Trustee would not distribute the Trust until after the estate tax obligations were met in 2030 with the following: "Trustee **did not** confirm that she will not distribute any portion of the Trust estate to beneficiaries before 2030. Petitioners' statement misunderstands the Trust instrument. The Trust requires funding of sub-trusts, **not outright distribution**. Only on the death of Mary's children will the Trust's assets be distributed outright." The

---

[5] Petitioner argues that even if the information provided in the 2019 Objection was sufficient at the time, it was now "too stale." Petitioner provides no changed circumstances or other basis for needing updated information. Instead, she claims section 17200, subdivision (b)(7)(B) requires the information be provided in the six months preceding the *petition*; in fact, the statute authorizes a petition when "the beneficiary has not received the requested information from the trustee within the six months preceding the *request*." (Italics added.)

9

2019 Objection later reiterated, "Upon distribution, [Mary's children] do not receive the principal of the Trust. Each child's share will be funded into a sub-trust of which each child will receive the income. Mary's grandchildren will receive the principal upon the death of the child-parent." These statements about the Trust's distribution provisions give no information about *when* the Trustee plans to distribute the Trust estate to the subtrusts. Accordingly, the trial court's finding that Trustee previously provided information about her distribution plan is not supported by substantial evidence.

We next consider whether the court's denial of the Petition's claim for information about the distribution plan can be affirmed on the alternative ground that it was barred by res judicata.[6] " ' "Res judicata" describes the preclusive effect of a final judgment on the merits.' [Citation.] It 'prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.' [Citation.] Under the doctrine of res judicata, 'all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date.' [Citation.] [¶] A claim raised in a second suit is 'based on the same cause of action' as one asserted in a prior action if they are both premised on the same 'primary right.' [Citation.] 'The plaintiff's primary right is the right to be free from a particular injury, regardless of the legal theory on which liability for the injury is based. [Citation.] The scope of the primary right therefore depends on how the injury is defined. A cause of action comprises the plaintiff's primary right, the defendant's corresponding primary duty, and the

---

[6] Because we affirm the trial court's finding that Trustee already provided information about her estate tax plan, we need not decide whether this aspect of the Petition was barred by res judicata.

10

defendant's wrongful act in breach of that duty.' " (*Estate of Dito* (2011) 198 Cal.App.4th 791, 801.)

Although the 2019 Petition briefly referred to Petitioner's 2018 request for information and the question of distribution timing, it was not primarily concerned with this issue. Instead, the overwhelming focus of the 2019 Petition was on Trustee's plan to satisfy the Trust's estate tax and specific gift obligations, and it was for this express purpose that the petition sought a temporary trustee or limited purpose receiver. The primary right at issue in the 2019 Petition was thus a beneficiary's interest in ensuring the trustee preserves the assets of the trust. (See § 16006 ["The trustee has a duty to take reasonable steps under the circumstances to take and keep control of and to preserve the trust property."].) The primary right involved in the Petition's claim for information about trust distribution is a beneficiary's right to information relevant to the beneficiary's interest. (See § 16061.) Because different primary rights were involved, the trial court erred in finding the Petition's request for information about distribution of the Trust barred by res judicata. We will reverse and remand this aspect of the court's order.

III. *Trustee Fees*

The Petition sought a determination of the reasonableness of the more than $1 million Trustee paid herself in fees for work performed from 2015 through 2019. (§ 17200, subd. (b)(9) [authorizing petition for "reviewing the reasonableness of the trustee's compensation"].) In her objection, Trustee argued her fees were presumptively appropriate under a local rule providing for annual trustee fees of one percent of the value of the trust. The trial court found Trustee's fees reasonable, relying solely on the local rule.

11

"If the trust instrument does not specify the trustee's compensation, the trustee is entitled to reasonable compensation under the circumstances."[7] (§ 15681.)  California Rules of Court rule 7.776 (rule 7.776) provides, "In determining or approving compensation of a trustee, the court may consider, among other factors, the following: [¶] (1)  The gross income of the trust estate; [¶] (2)  The success or failure of the trustee's administration; [¶] (3) Any unusual skill, expertise, or experience brought to the trustee's work; [¶] (4)  The fidelity or disloyalty shown by the trustee; [¶] (5)  The amount of risk and responsibility assumed by the trustee; [¶] (6)  The time spent in the performance of the trustee's duties; [¶] (7)  The custom in the community where the court is located regarding compensation authorized by settlors, compensation allowed by the court, or charges of corporate trustees for trusts of similar size and complexity; and [¶] (8)  Whether the work performed was routine, or required more than ordinary skill or judgment."

The superior court's local rules include an attachment to its probate rules setting forth "general guidelines for allowable fees and costs in probate, trust, guardianship and conservatorship proceedings."  (Super. Ct. Contra Costa County, Local Rules, ch. 13, Guidelines for Probate Rules, att. 2.) During the years for which Trustee received the challenged fees—2015 to 2019—one of these guidelines provided, in relevant part, "The Court will approve, without a supporting declaration, annual fees of one percent (1%) of the present fair market value of all estate property, real or personal, at the beginning of the accounting period, but not including income received during the accounting period nor net gains and/or losses."  (Super. Ct. Contra Costa County, Local Rules, Guidelines for Probate Rules, att. 2(g) [local rules eff.

---

[7] The Trust provides only that a trustee is entitled to "reasonable compensation."

12

July 1, 2019; att. 2 revised eff. Jan. 1, 2016]; Super. Ct. Contra Costa County, Local Rules, Guidelines for Probate Rules, att. 2(g) [local rules eff. Jan. 1, 2015; att. 2 revised eff. Jan. 1, 2015].) The fair market value of all Trust property is more than $100 million, so Trustee's fees of approximately $250,000 per year falls well under the one percent threshold.

Petitioner argues this local rule is inconsistent with section 15681 and/or rule 7.776.[8] (See *In re Harley C.* (2019) 37 Cal.App.5th 494, 501 [" '[a] trial court is without authority to adopt local rules or procedures that conflict with statutes or with rules of court adopted by the Judicial Council' "].) We need not decide this issue because, as Trustee concedes, the relevant portion of the local rules was only a guideline. Our question therefore is whether the trial court erred in applying the guideline in this case. We answer in the affirmative because of the particularities of this Trust; specifically, that the Trust is worth a substantial amount but its largest asset is a separately managed business.[9] Under such circumstances, authorizing fees based solely on a percentage of the Trust's value failed to determine whether Trustee's fees were reasonable. We express no opinion on the reasonableness of these

---

[8] We note that the local rule has since been substantially amended. The current guideline provides, in relevant part: "The Court will approve, without a supporting declaration, annual fees of up to one percent (1%) of the present fair market value of all estate property only upon a factual showing that either (1) the governing instrument specifically provides for this measure of compensation, or (2) this measure of compensation is reasonable (considering the factors set forth in California Rule of Court 7.776) and in the best interests of the estate and its beneficiaries." (Super. Ct. Contra Costa County, Local Rules, Guidelines for Probate Rules, att. 2(h) [eff. Jan. 1, 2024].)

[9] The Petition states that Trustee, in her individual capacity, serves on the Board of Directors for the Garaventa Entities and receives separate compensation for that role.

13

fees, and remand for the trial court to make this determination pursuant to section 15681 and rule 7.776.

IV.    *Attorney Invoices*

The Petition sought an order compelling Trustee to provide the invoices from Trustee's attorneys, who had been paid approximately $3 million, arguing the invoices were relevant to Petitioner's interests under section 16061 "to support the reasonableness and appropriateness of those fees."

Trustee's objection cited provisions of the Trust limiting a trustee's liability to " 'cases of willful misconduct, bad faith, or gross negligence,' " and authorizing a trustee to retain attorneys and " 'pay them out of the trust estate such compensation as the Trustee, in the Trustee's discretion, determines to be reasonable and proper.' " Trustee set forth in detail the numerous legal needs of the Trust, including sorting Mary's finances, which "were a mess;" preparing the estate tax return, which required "appraising or valuing 11 companies, real estate, and personal holdings;" filing legal action to clarify the estate planning documents; defending against numerous petitions; and pursuing or defending numerous civil actions. Trustee argued, "There can be no doubt: [Trustee] incurred a significant amount of attorney's fees since becoming trustee. However, the propriety of those fees is left to her judgment, and [Petitioner and Joseph] must demonstrate 'willful misconduct, bad faith, or gross negligence.' This they cannot do. All of the attorney's fees incurred by [Trustee] were and remain appropriate." Trustee also argued the invoices were protected by attorney-client privilege and the work-product doctrine.

The trial court found, "Given the heightened standard of the Trust's limitation of liability on a trustee, as well as the need for the trustee to continue engaging counsel of her choice to pursue and defend litigation,

14

[Petitioner and Joseph's] claims related to the expenditure of attorney's fees by the trustee is not reasonably necessary for the protection of the interests of the trustee or beneficiary and, therefore, the Court dismisses the claim pursuant to Probate Code section 17202."[10]  The court also found the attorney invoices protected by attorney-client privilege and the work-product doctrine.

"[W]e will apply the abuse of discretion standard to the trial court's assessment of the interests of the trustee or beneficiary under section 17202." (*Gregge v. Hugill* (2016) 1 Cal.App.5th 561, 567; see also *Esslinger v. Cummins, supra,* 144 Cal.App.4th at p. 526.)  Petitioner fails to establish an abuse of discretion.  The trial court could reasonably find that the amount of attorney fees paid fell within Trustee's discretion in light of the significant amount of legal work needed, and that Petitioner therefore did not have an interest in reviewing the invoices.  The trial court could further reasonably find that Petitioner failed to make a sufficient showing of a possible breach of trust.[11]  Because we affirm the trial court's dismissal of this claim, we need not decide whether, as the parties dispute, the attorney invoices are protected by the attorney-client privilege or the work-product doctrine.

V.    *Interim Fees*

The Petition sought an order precluding Trustee from using Trust funds to defend against the Petition unless and until Trustee is declared the prevailing party.  The trial court rejected the claim in its order denying the Petition in its entirety.

---

[10] See *ante,* fn. 3.

[11] Petitioner argues there is a potential breach of trust because Trustee's son works at the law firm receiving most of the attorney fees.  In her verified objection below, Trustee stated her son "works in an unrelated field and receives no compensation for the firm's representation of [Trustee]."

15

When a petitioner challenges the right of a trustee to use trust funds to defend against the petition and "where the trust instrument is silent on interim fees, the *grant* of interim fees should be governed by the following: The court must first assess the probability that the trustee will ultimately be entitled to [use trust funds for] attorney fees and then balance the relative harms to all interests involved in the litigation, including the interests of the trust beneficiaries. An assessment of the balance of harms requires at least some inquiry into the ability of the trustee or former trustee to repay fees if ultimately determined not to be entitled to [use trust funds for] the costs of defense." (*People ex rel. Harris v. Shine* (2017) 16 Cal.App.5th 524, 539.) We need not and do not decide whether, as the parties dispute, the Trust is silent on interim fees. Even so assuming, neither of the claims we are reversing and remanding to the trial court would provide a basis to require Trustee to reimburse the Trust for attorney fees. Accordingly, we affirm the trial court's denial of Petitioner's request to preclude Trustee from using Trust funds in defending against the Petition unless and until she is declared the prevailing party.

## DISPOSITION

The order is reversed and remanded with directions to the trial court to: (1) grant the Petition's request for an order directing Trustee to report to the beneficiaries concerning her plan to make distributions from the Trust to the subtrusts; and (2) determine whether Trustee's fees from 2015 to 2019 were reasonable. The order is otherwise affirmed. The parties shall bear their own costs on appeal.

SIMONS, J.

WE CONCUR:

JACKSON, P. J.

16

BURNS, J.

*Colvis v. Binswanger* (A163467)